**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

TOMMIE GLANTON, on behalf of
ALCOA Prescription Drug Plan
and all other similarly situated
plans, et al.; TARA MACKNER, on
behalf of the KMART
COMPREHENSIVE HEALTH PLAN,
            *Plaintiffs-Appellants,*

            v.

ADVANCEPCS INC.,
            *Defendant-Appellee.*

No. 04-15328

D.C. Nos.
CV-02-00507-SRB
CV-03-00607-SRB

OPINION

Appeal from the United States District Court
for the District of Arizona
Susan R. Bolton, District Judge, Presiding

Argued and Submitted
October 18, 2005—San Francisco, California

Filed October 17, 2006

Before: Alex Kozinski and Ferdinand F. Fernandez,
Circuit Judges, and Terry J. Hatter, Jr.,* District Judge.

Opinion by Judge Kozinski

---

*The Honorable Terry J. Hatter, Jr., Senior United States District Judge
for the Central District of California, sitting by designation.

17579

**COUNSEL**

Stephen J. Herman, Herman Mathis Casey Kitchens & Gerel, LLP, New Orleans, Louisiana; David S. Casey, Jr., Herman Mathis Casey Kitchens & Gerel, LLP, San Diego, California; Mary E. Alexander, Mary Alexander & Associates, San Francisco, California, for the plaintiff-appellant.

Paul J. Ondrasik, Jr., Martin D. Schneiderman, Eric G. Serron, Steptoe & Johnson LLP, Washington, D.C.; Peter S.

Kozinets, Steptoe & Johnson LLP, Phoenix, Arizona, for the defendant-appellee.

Howard M. Radzely, Solicitor of Labor, Timothy D. Hauser, Associate Solicitor, Elizabeth Hopkins, Counsel for Appellate and Special Litigation, Mary F. Williams, Trial Attorney, for amicus Secretary of the United States Department of Labor, Washington, D.C.

Douglas K. deVries, deVries Law Firm, Sacramento, California; Ronald Dean, Pacific Palisades, California; Amy Bach, United Policyholders, San Francisco, California, for amicus United Policyholders.

## OPINION

KOZINSKI, Circuit Judge:

We consider whether prescription drug plan participants who have suffered no judicially cognizable injury may sue their plans' fiduciaries under the Employee Retirement Income Security Act of 1974 ("ERISA").

### Facts

AdvancePCS is a pharmacy benefits management company (PBM). PBMs manage prescription drug benefit programs and seek to reduce their clients' drug costs by pooling claims and negotiating volume discounts with pharmaceutical companies. Among AdvancePCS's clients are employee welfare benefit plans sponsored by ALCOA and K-Mart.

When AdvancePCS receives a prescription from one of the plan participants, it decides whether to buy the drug (preferably from a seller with whom it has negotiated a discount), reject the claim or switch the participant to another drug.

AdvancePCS pays for the drugs with plan assets after accounting for the participant's co-payment. Plaintiffs allege that, in addition to earning fees from the plans, AdvancePCS has secretly been keeping the spread between what it charges the plans for drugs and what it pays suppliers—a practice plaintiffs claim violates ERISA.

Plaintiff Tommie Glanton works for ALCOA and is a member of its prescription drug plan. Plaintiff Tara Mackner was a member of the K-Mart plan, but ceased working for K-Mart after the suit was filed and thus no longer participates in its plan.[1]

Plaintiffs sued AdvancePCS under ERISA for breach of fiduciary duty. The district court found that plaintiffs lacked standing. Plaintiffs appeal.

## Analysis

**[1] 1.** ERISA authorizes plan participants to sue fiduciaries for losses the plan suffers from a breach of their duties. 29 U.S.C. §§ 1109, 1132(a). A plan fiduciary is defined as anyone who exerts "any discretionary authority . . . respecting management of such [a] plan." 29 U.S.C. § 1002(21)(A).

**[2]** AdvancePCS easily fits this definition. In choosing whether to fill a prescription or shift a participant to a different drug, it exercises discretion over the plans' assets. While AdvancePCS is not named as a plan fiduciary, the applicable section of ERISA makes no distinction between named and unnamed fiduciaries. *See* 29 U.S.C. § 1002(21)(A); *see also Kayes* v. *Pac. Lumber*, 51 F.3d 1449, 1458-61 (9th Cir. 1995). It follows that plaintiffs here are authorized to sue AdvancePCS for breach of fiduciary duty.

---

[1]The parties dispute whether Mackner lost whatever standing she had when she stopped working for K-Mart. Because we conclude that Mackner lacked standing in the first place, we do not reach this question.

**[3] 2.** Plaintiffs, nevertheless, cannot proceed unless they have Article III standing. *See Raines* v. *Byrd*, 521 U.S. 811, 820 n.3 (1997). They claim to meet the traditional standing requirements outlined by *Lujan* v. *Defenders of Wildlife*, 504 U.S. 555 (1992). Alternatively, they contend that they have standing as congressionally authorized representatives of the injured plans.

**[4]** To establish standing under *Lujan*, plaintiffs must show a likelihood that the injury they have suffered will be redressed by a favorable outcome to the litigation. *Id.* at 560-62. Plaintiffs don't claim they were denied benefits or received inferior drugs. Rather, they claim that AdvancePCS charged the plans too much for drugs, and that this caused the plans to demand higher co-payments and contributions from participants. Plaintiffs claim that, if their suit is successful, the plans' drug costs will decrease, and that the plans might then reduce contributions or co-payments. But nothing would force ALCOA or K-Mart to do this, nor would any one-time award to the plans for past overpayments inure to the benefit of participants. ALCOA and K-Mart would be free to reduce their contributions or cease funding the plans altogether until any such funds were exhausted. There is no redressability, and thus no standing, where (as is the case here) any prospective benefits depend on an independent actor who retains "broad and legitimate discretion the courts cannot presume either to control or to predict." *ASARCO, Inc.* v. *Kadish*, 490 U.S. 605, 615 (1989) (opinion of Kennedy, J.); *see also Fernandez* v. *Brock*, 840 F.2d 622, 627 (9th Cir. 1988).

Other circuits that have considered this issue have reached the same conclusion. *See Cent. States Se. & Sw. Areas Health & Welfare Fund* v. *Merck-Medco Managed Care*, 433 F.3d 181, 201 (2d Cir. 2005); *Horvath* v. *Keystone Health Plan E.*, 333 F.3d 450, 455 (3d Cir. 2003); *Harley* v. *Minnesota Mining & Mfg.*, 284 F.3d 901, 906 (8th Cir. 2002).

**[5]** We therefore turn to plaintiffs' argument that they have standing to bring this lawsuit as representatives of the plan.

Plaintiffs rely heavily on *Vermont Agency of Natural Resources* v. *United States ex rel. Stevens*, 529 U.S. 765 (2000), which upheld qui tam actions against an Article III standing challenge. Relators in qui tam actions are congressionally authorized to sue for redress of injuries suffered by the United States. Qui tam plaintiffs retain a percentage of the recovery; the rest goes to the United States. The issue in *Vermont Agency* was whether the fact that qui tam plaintiffs have suffered "no . . . invasion" of any "legally protected right" precludes them from having Article III standing. *Id.* at 772-73.

[6] The Court concluded that the False Claims Act (FCA) "can reasonably be regarded as effecting a partial assignment of the Government's damages claim" to the relator, and that an "adequate basis for the relator's suit [could be found] in the doctrine that the assignee of a claim has standing to assert the injury in fact suffered by the assignor." *Id.* at 773. The Court noted "the long tradition of *qui tam* actions in England and the American Colonies," and that it has "routinely" entertained suits by assignees. *Id.* at 773-74.

[7] We find the qui tam analogy inapt. Whereas qui tam actions have existed for centuries, there is no similar tradition of unharmed ERISA beneficiaries bringing suit on behalf of their plans.[2] More importantly, the FCA assigns relators a concrete stake in qui tam cases by giving them a piece of the action. *Id.* at 772. ERISA gives plan beneficiaries nothing; any monetary recovery goes to the plans—as would the benefits of any injunctive relief.[3]

---

[2]Traditionally, trust law, on which ERISA is based, does not allow beneficiaries to bring suit on behalf of the trust. *See Restatement (Second) of Trusts* § 214 cmt. b. ("A particular beneficiary cannot maintain a suit for a breach of trust which does not involve any violation of duty to him.").

[3]Plaintiffs point to language in *Vermont Agency* that they claim supports their position: "It would perhaps suffice to say that *the relator here is simply the statutorily designated agent of the United States.*" 529 U.S. at 772

Plaintiffs argue, more generally, that "representative damages litigation is common—from class actions under Fed. R. Civ. P. 23(b)(3) to suits by trustees representing hundreds of creditors in bankruptcy to *parens patriae* actions by state government to litigation by and against executors of decedents' estates." *In re Oil Spill by the Amoco Cadiz*, 954 F.2d 1279, 1319 (7th Cir. 1992), quoted with approval in *United Food & Commercial Workers Union Local No. 751* v. *Brown Group, Inc.*, 517 U.S. 544, 557 (1996). None of these examples is particularly relevant to our case, because in each the plaintiff has a direct stake in the outcome of the litigation. A party can only serve as class representative if he has a personal claim

---

(emphasis added). According to plaintiffs, they, too, have been designated by statute as the agents of their respective plans, and have standing, just like qui tam relators. But, plaintiffs' truncated quotation omits an important qualifier: "in whose name (as the statute provides) the suit is brought —and that the relator's bounty is simply the fee he receives out of the United States' recovery for filing and/or prosecuting a successful action on behalf of the Government." *Id.* (emphases omitted). As the omitted portion of the sentence makes clear, the Supreme Court started with the assumption that a qui tam relator has an interest in the outcome of the lawsuit because he stands to gain a part of any recovery. The Court thus had no cause to consider the situation where a party is authorized to bring suit on behalf of another party, but is given no stake in the outcome.

The passage, read in context, is even more problematic. In the immediately succeeding sentence, the Court notes that "the statute gives the relator himself an interest in the lawsuit, and not merely the right to retain a fee out of the recovery." *Id.* (emphasis omitted). "There is no doubt, of course," the Court further noted, "that as to this portion of the recovery— the bounty he will receive if the suit is successful—a *qui tam* relator has a 'concrete private interest in the outcome of [the] suit.' " *Id.* (quoting *Lujan*, 504 U.S. at 573) (alteration in original). The balance of the opinion deals with the difficult question of whether Congress *may* give a third party a stake in a lawsuit seeking to redress the invasion of somebody else's rights. The Court concludes (as we note in text) that it does, on the theory that a part of the claim is assigned to the relator. Because the opinion's rationale hinges on the existence of such an assignment, it cannot apply to plaintiffs here, who have been assigned no right to any portion of the recovery.

that is representative of the claims of other class members; while he also litigates the case on behalf of the class, he always shares in any recovery, on a par with other class members. Trustees and executors, likewise, have a stake in the litigation because they are acting on behalf of the estate, which owns the claims being litigated. Finally, governmental entities have a concrete stake in the proper application of the laws of their jurisdiction, giving them a sufficient basis for Article III standing in *parens patriae* cases. *Alfred L. Snapp & Son, Inc.* v. *Puerto Rico ex rel. Barez*, 458 U.S. 592, 607 (1982).[4]

[8] Nor can plaintiffs find comfort in the associational standing cases, where the Supreme Court has held that associations or unions may bring suit to redress the rights of their members, even though the suing entity itself suffered no injury. *See, e.g.*, *United Food & Commercial Workers*, 517 U.S. at 558. These cases turn on the fiction that an individual member authorizes the group to sue on his behalf. As the Court discussed it in *NAACP* v. *Alabama ex rel. Patterson*, 357 U.S. 449 (1958), the association "and its members are in a very practical sense identical." *Id.* at 459, *quoted in United Food & Commercial Workers*, 517 U.S. at 552. When the association is "organized for a purpose germane to the subject of its member's claim . . . the association's litigators will themselves have a stake in the resolution of the dispute, and

---

[4]Like the district court, we find *Amalgamated Clothing & Textile Workers Union, AFL-CIO* v. *Murdock*, 861 F.2d 1406 (9th Cir. 1988), and *Waller* v. *Blue Cross of California*, 32 F.3d 1337 (9th Cir. 1994), inapposite. Both of these cases held that ERISA beneficiaries could seek a constructive trust for ill-gotten gains fiduciaries allegedly received as a result of breaching their duties. The question was not standing, but whether ERISA authorized a remedy that would inure to the benefit of the plan participants rather than the plan. We concluded that it did, because the plans had been dissolved and any recovery would otherwise cycle back to the wrongdoers. This removed any doubt as to standing because it gave the beneficiaries a concrete stake in the lawsuit. Plaintiffs here do not seek a constructive trust for their own benefit, or any other remedy that would entitle them to any amount recovered in this lawsuit. Nor could they, because any recovery could not inure to the benefit of AdvancePCS.

thus be in a position to serve as the defendant's natural adversary." *United Food & Commercial Workers*, 517 U.S. at 555-56.

**[9]** The theory underlying the associational standing cases does not operate in reverse: By joining the association, the member gives some indication that the association represents his interests; but in accepting his membership, the association gives no reciprocating signal that the member represents *its* interests. Thus, a health plan might be able to sue on behalf of its injured subscribers even if the plan suffered no injury itself, but not vice versa. To hold otherwise would turn the associational standing caselaw on its head—fatally undermining any limitation the requirement of concrete injury places on constitutional standing.

**[10]** Finally, plaintiffs point to *Massachusetts Mutual Life Insurance* v. *Russell*, 473 U.S. 134, 142 n.9 (1985), where the Court noted that ERISA plan beneficiaries may bring suits on behalf of the plan in a representative capacity. We have no quarrel with this proposition—so long as plaintiffs otherwise meet the requirements for Article III standing. ERISA plans are organized in a variety of ways, and no doubt some would give participants a stake in a lawsuit against fiduciaries. *See, e.g.*, *Kayes*, 51 F.3d at 1453 (plaintiffs alleged that the plan fiduciary's selection of a financially troubled insurance company was a breach of fiduciary duty that caused annuity payments owed *to the plaintiffs* to be reduced to seventy percent of their previous level). In such cases, plan beneficiaries can also sue on behalf of the plans, because they will have a concrete stake in the outcome of the proceedings. Such is not the case here.

**AFFIRMED.**