**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEVE HARRIS; DENNIS F. RAMOS,
On Behalf of Themselves and All
Others Similarly Situated,
                    *Plaintiffs-Appellants,*

                    v.

AMGEN, INC.; FRANK J. BIONDI, JR.;
JERRY D. CHOATE; FRANK C.
HERRINGER; GILBERT S. OMENN;
DAVID BALTIMORE; JUDITH C.
PELHAM; KEVIN W. SHARER;
FREDERICK W. GLUCK; LEONARD D.
SCHAEFFER; ROBERT A. BRADWAY;
RETIREMENT BENEFITS
COMMITTEE OF THE BOARD OF
DIRECTORS OF AMGEN,
                    *Defendants-Appellees.*

No. 08-55389

D.C. No.
2:07-cv-05442-PSG-
PLA

OPINION

Appeal from the United States District Court
for the Central District of California
Philip S. Gutierrez, District Judge, Presiding

Argued and Submitted
May 8, 2009—Pasadena, California

Filed July 14, 2009

Before: Betty B. Fletcher, Raymond C. Fisher, and
Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

---

**COUNSEL**

Francis M. Gregorek, Betsy C. Manifold, Rachele R. Rickert, and Mark C. Rifkin (argued), Wolf Haldenstein Adler Freeman & Herz LLP, San Diego, California, and Thomas J. McKenna, Gainey & McKenna, New York, New York, for the plaintiffs-appellants.

Steven O. Kramer, John Nadolenco, Mack Anderson, Robert P. Davis (argued), and Michele L. Odorizzi, Mayer Brown LLP, Los Angeles, California, for the defendants-appellees.

---

**OPINION**

GOULD, Circuit Judge:

Steve Harris and Dennis F. Ramos (collectively, "Plaintiffs") sued Amgen, Inc. ("Amgen") and several Amgen directors and officers, alleging that the defendants breached their fiduciary duties under the Employee Retirement Income Security Act ("ERISA") in their operation of two ERISA retirement plans. The district court dismissed Harris's claims on the ground that he lacked standing as an ERISA plan "participant" because he had withdrawn all of his assets from his plan. It also dismissed Ramos's claims, reasoning that although Ramos had standing, he did not allege any claims against defendants who were fiduciaries under the plan. The

district court then denied Plaintiffs leave to amend their complaint.

We reverse the dismissal of Plaintiffs' complaint. We hold that Harris has standing as an ERISA plan participant to seek relief under ERISA § 502(a)(2), codified at 29 U.S.C. § 1132(a)(2), despite having withdrawn all of his assets from his plan. We also conclude that the district court improperly denied Plaintiffs leave to amend their complaint to add more factual allegations where necessary and to identify proper fiduciaries of the Plaintiffs' ERISA plans.

## I

Amgen is a publicly traded biotechnology company that operates Amgen Manufacturing, Ltd. ("Amgen Manufacturing") as a wholly owned subsidiary. Employees of Amgen are entitled to participate in the Amgen Retirement and Savings Plan (the "Amgen Plan"), and Amgen Manufacturing employees may participate in the Retirement and Savings Plan for Amgen Manufacturing, Ltd. (the "Manufacturing Plan"). Each Plan is a "defined contribution plan," defined as "a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account." 29 U.S.C. § 1002(34).[1]

Amgen is a "named fiduciary" only of the Amgen Plan,[2] and Amgen Manufacturing is a named fiduciary only of the Manufacturing Plan. The Amgen Plan allows the Amgen Board of Directors (the "Board") to delegate management and administration of the Plan to a "Fiduciary Committee." Dur-

---

[1]A defined contribution plan is distinct from a "defined benefit plan," which, with exceptions not relevant here, "means a pension plan other than an individual account plan." 29 U.S.C. § 1002(35).

[2]A named fiduciary is "a fiduciary who is named in the plan instrument" or by an authorized employer or employee organization. 29 U.S.C. § 1102(a)(2).

ing the time relevant to this appeal, fiduciary responsibilities for both Plans were delegated to the Fiduciary Committee.

Steve Harris worked at Amgen until January 2007 and participated in the Amgen Plan. His Amgen Plan holdings sometimes included Amgen stock. Harris withdrew his assets from his Amgen Plan account in July 2007. Dennis F. Ramos worked at Amgen Manufacturing until March 2007, participating in the Manufacturing Plan. His Manufacturing Plan holdings also sometimes included Amgen Stock. Ramos still has assets in the Manufacturing Plan.

In August 2007 Harris and Ramos filed a class action complaint (the "Complaint"), alleging that during a 22-month class period the defendants breached their fiduciary duties by allowing the Plans to purchase and hold Amgen stock while knowing that the stock price was artificially inflated because of improper off-label drug marketing and sales. The Complaint asserts that the Amgen stock price declined significantly once the off-label activity became public, and Harris and Ramos claim that the defendants are liable for the resulting losses suffered by the class members. The Complaint sought relief under ERISA § 502(a)(2) ("Section 502(a)(2)"), codified at 29 U.S.C. § 1132(a)(2), which authorizes a suit by a plan participant "for appropriate relief" against a plan fiduciary for breach of fiduciary duty.

The Complaint names as defendants Amgen, Amgen's chief financial officer, and nine Amgen Board members (collectively, "Defendants"). Neither Amgen Manufacturing nor the Fiduciary Committee is named as a defendant. However, the Complaint does assert claims against a "Retirement Benefits Committee of the Board of Directors of Amgen," which it claims has fiduciary responsibilities over both Plans.

Defendants filed a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1), and for failure to state a claim under Rule

12(b)(6). The district court granted the motion and dismissed with prejudice all of Harris's claims, concluding that Harris did not have statutory standing as a "participant" in the Amgen Plan because he had already cashed out of his Plan account. The district court determined that Ramos had standing because he still had assets in the Manufacturing Plan, but it dismissed with prejudice all of Ramos's claims on the ground that neither Amgen, the alleged retirement committee, nor the named defendants were fiduciaries of the Manufacturing Plan.

The district court also denied Plaintiffs' request for leave to amend their Complaint. The district court reasoned that Harris could not cure his lack of standing through amendment and that Ramos did not "have a viable claim against the named defendants." The district court expressly made "no determination as to whether Plaintiffs have a viable claim against Amgen Manufacturing or the members of the Fiduciary Committee." Harris and Ramos appeal the dismissal of their claims and the denial of leave to amend.

## II

### A

We first consider whether the district court properly determined that Harris lacked standing under Section 502(a)(2) because he had withdrawn his assets from the Amgen Plan. We review questions of standing under ERISA *de novo*. *Stewart v. Thorpe Holding Co. Profit Sharing Plan*, 207 F.3d 1143, 1148 (9th Cir. 2000).[3]

___

[3]Although the district court dismissed Harris's claims for lack of subject matter jurisdiction, a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim. *See Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1024 (9th Cir. 2009). However, "[b]ecause we review dismissals under both Rule 12(b)(1) and Rule 12(b)(6) *de novo*, the district court's error [in characterization] does not affect the result in this case." *Id.* (citation omitted).

**[1]** "To establish standing to sue under ERISA, [plaintiffs] must show that they are plan 'participants.' " *Poore v. Simpson Paper Co.*, 566 F.3d 922, 925 (9th Cir. 2009). Plaintiffs seek relief under Section 502(a)(2), which grants standing to a plan participant to bring an action against a defendant who breaches a fiduciary duty with respect to that plan. *See* 29 U.S.C. § 1132(a)(2). An ERISA plan participant is "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." 29 U.S.C. § 1002(7). This definition encompasses "former employees who have . . . a colorable claim to vested benefits." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989) (internal quotation omitted). "In contrast, former employees do not have standing if a successful suit would result in a damage award that was not for benefits due under the plan." *Vaughn v. Bay Envtl. Mgmt., Inc.*, 567 F.3d 1021, 1025 (9th Cir. 2009) (citing *Kuntz v. Reese*, 785 F.2d 1410, 1411 (9th Cir. 1986) (per curiam)).

The district court relied on *Kuntz* in concluding that Harris was not a "participant" in the Amgen Plan. In *Kuntz*, we held that a plaintiff who alleges that a former employer misrepresented the benefits due under a defined benefit ERISA plan does not have standing if that plaintiff already received all benefits that were due before filing suit and seeks only a damage award. *Kuntz*, 785 F.2d at 1411. The district court reasoned that because Harris had cashed out of the Amgen Plan, any recovery he receives would be a damage recovery, and he would not have prevailed in a "suit for benefits," *Firestone*, 489 U.S. at 117, because "a damage claim is not a plan benefit." *Kuntz*, 785 F.2d at 1411.

**[2]** When it dismissed Harris's claims, the district court did not have the benefit of the reasoning and holding in our subsequent decision in *Vaughn*, in which we distinguished *Kuntz* and held that "former employees who have received a full distribution of their account balances under a defined contribu-

tion pension plan have standing as plan participants under ERISA to recover losses occasioned by a breach of fiduciary duty that allegedly reduced the amount of their benefits." *Vaughn*, 567 F.3d at 1030. In *Vaughn* the plaintiff sued fiduciaries of his employer's defined contribution ERISA plans, alleging that the fiduciaries breached their fiduciary duties with respect to the plans when they did not take certain actions despite knowing the plans would be terminated. The plaintiff claimed that "he has not received all of the benefits due to him under the Plans . . . . because his accounts contained less than they would have if the fiduciaries had not breached their duty of prudent investment." *Id.* at 1026.

The district court in *Vaughn* had granted the defendants' motion to dismiss based on *Kuntz*, but on the appeal we distinguished *Kuntz* because there the plaintiffs had "conceded that they had received all of the benefits due to them under the plan [and] alleged only that they would not have participated in the plan but-for the defendant's misrepresentations about the amount of benefits they would receive." *Id.* We held in *Vaughn* that "[b]ecause [the plaintiff] alleges that he did not receive everything that was due to him under the Plan, he has standing, even under *Kuntz*." *Id.* We also noted that every other circuit to have considered this issue has held that a defined contribution plan plaintiff has ERISA standing. *See id.* at 1023 & n.1 (citing cases).

**[3]** Despite the marked similarity between this case and *Vaughn*, Defendants contend that we should distinguish *Vaughn* on two grounds. First, Defendants argue that *Vaughn* is not controlling because there the employer terminated the ERISA plans, but here Harris voluntarily withdrew his assets from the still existing Amgen Plan. However, our reasoning in *Vaughn* does not turn on a distinction between employer termination and voluntary withdrawal. Also, other circuits have granted plaintiffs ERISA standing to pursue breach of fiduciary duty claims even when the plaintiffs had voluntarily cashed out of their ERISA plans. *See, e.g., In re Mutual*

*Funds Inv. Litig.*, 529 F.3d 207, 210 (4th Cir. 2008); *Harzewski v. Guidant Corp.*, 489 F.3d 799, 804 (7th Cir. 2007). When employees withdraw their funds from a benefit plan, but claim that they would have had more to withdraw absent breach of fiduciary duty by those managing the plan, it is not difficult to see a common sense loss of benefits in their plan caused by the alleged fiduciary breach. Relying on *Vaughn*, which we conclude is not distinguishable in any material way, we hold that employees who cash out of a defined contribution ERISA plan are still "participants" in that plan, as defined by 29 U.S.C. § 1002(7), regardless of whether they withdrew their assets voluntarily. Thus the district court's conclusion on standing, reached without the benefit of our subsequently decided *Vaughn* precedent, must be reversed. Harris had standing to complain about his retirement benefits plan.

Second, at oral argument, Defendants conceded that Harris was a participant in the Amgen Plan, but for the first time argued that Harris should have statutory standing only under ERISA § 502(a)(1)(B) ("Section 502(a)(1)(B)"), and not Section 502(a)(2).[4] Defendants rely on Chief Justice Roberts's concurrence in *LaRue v. DeWolff, Boberg & Assocs., Inc.*, 128 S. Ct. 1020 (2008). In *LaRue* the Supreme Court held that an ERISA plan participant may recover monetary losses to his or her individual plan account due to an alleged fiduciary breach. *Id.* at 1026. In his concurrence, which was joined only by Justice Kennedy, Chief Justice Roberts said that "[i]t is at least arguable that a claim of this nature properly lies only under § 502(a)(1)(B) of ERISA," *id.*, and he concluded that "other courts in other cases remain free to consider what we

---

[4]Section 502(a)(1)(B) allows a plan participant "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(B). By contrast, Section 502(a)(2) encompasses claims based on breach of fiduciary duty and allows for the more expansive recovery of "appropriate relief," including disgorgement of profits and equitable remedies. *See* 29 U.S.C. §§ 1132(a)(2), 1109.

have not—what effect the availability of relief under § 502(a)(1)(B) may have on a plan participant's ability to proceed under § 502(a)(2)," *id.* at 1028. Defendants argue that because Harris could bring a claim under Section 502(a)(1)(B), he lacks standing to bring a claim under Section 502(a)(2).

[4] We reject Defendants' attempt to create a distinction on standing between two similar ERISA causes of action. Although Defendants are correct that in *Vaughn* a Section 502(a)(1)(B) remedy was unavailable,**⁵** nothing in *Vaughn* indicates that its decision depended on the unavailability of this remedy. Also, at least two circuits that have analyzed whether a distinction on standing exists between Sections 502(a)(1)(B) and 502(a)(2) have concluded that "[t]his dichotomy is untenable." *Evans v. Akers*, 534 F.3d 65, 72-73 (1st Cir. 2008) ("The chief difference between an action brought under § 502(a)(1)(B) and § 502(a)(2) is the proper defendant, not the proper plaintiff. . . . Bringing the suit under § 502(a)(2) does not change the underlying nature of the plaintiffs' claim as one for benefits." (quotation and citation omitted)); *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 301 (3d Cir. 2007) (stating that even when plaintiffs "could demand a full benefit payment from the plan itself under § 1132(a)(1)(B) . . . . for most plaintiffs the sensible route is to use § 1132(a)(2) to get the money in the first instance from a solvent party liable to make good on the loss, not from the plan itself"). We agree with the reasoning of the First and Third Circuits, and we join them in holding that an ERISA plan participant who no longer has assets in the plan has statutory standing to assert fiduciary duty claims under Section

---

**⁵**In *Vaughn*, the ERISA plans at issue "no longer exist[ed] and the allegedly imprudent investments were the result of actions by the trustees and investment advisors, not the plan administrator. As a result, Vaughn could not have brought an action under § 502(a)(1)(B) because the proper defendants could not have been named under that subsection." *Vaughn*, 567 F.3d at 1029.

502(a)(2), even when relief is also available under Section 502(a)(1)(B).

**B**

Defendants next argue that even if Harris has statutory standing, we still must dismiss his claims for lack of standing under Article III of the United States Constitution because Harris has not sustained an injury that is redressable by a favorable decision of this court. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) (holding that Article III standing requires that "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be redressed by a favorable decision" (quotation omitted)). Defendants contend that any benefit to Harris is "merely speculative" because any recovery from Harris's suit would go to the Amgen Plan, and plan administrators have discretion in allocating plan assets. *See Paulsen v. CNF Inc.*, 559 F.3d 1061, 1073 (9th Cir. 2009) ("The Supreme Court has held that recovery for a violation of 29 U.S.C. § 1109 for breach of fiduciary duty inures to the benefit of the plan as a whole, and not to an individual beneficiary." (citing *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140-42 (1985))).

**[5]** Defendants are not the first ERISA defendants to make this redressability argument, and to our knowledge their asserted reasoning has been rejected by every circuit to consider the issue with respect to defined contribution plans. *See Evans*, 534 F.3d at 74-75 ("[T]he [ERISA] plaintiffs' allegation of fiduciary mismanagement . . . identifies a concrete injury that is redressable by a court and falls within the scope of Article III standing."); *Mutual Funds*, 529 F.3d at 210 ("[B]ecause the plans at issue are *defined contribution* plans, rather than *defined benefit* plans, we reject the defendants' argument that the plaintiffs' injuries are not redressable and therefore that they lack Article III standing."); *Harzewski*, 489 F.3d at 803 ("Obviously the named plaintiffs have [Article III] standing to sue . . . because if they win they will obtain

a tangible benefit."). With a favorable ruling, a defined contribution plan plaintiff alleging breach of fiduciary duty claims under Section 502(a)(2) can gain redress by "su[ing] for an adjustment in the benefits designed to give him what he would have received had the formula been honored," *Harzewski*, 489 F.3d at 804-05.

Our previous decisions dismissing ERISA suits for lack of redressability involved fundamentally different facts. *Paulsen* concerned a Section 502(a)(2) suit on a defined benefit plan, but "the redressability problem that arises in defined benefit plans does not exist with respect to defined contribution plans" because in defined contribution plans a successful suit leads to restoration of individual accounts. *Mutual Funds*, 529 F.3d at 218; *see also Vaughn*, 567 F.3d at 1028 n.9 ("[P]recedent from cases involving defined benefit plans is not automatically applicable in cases involving defined contribution plans." (citing *LaRue*, 128 S. Ct. at 1025)). Also, in *Paulsen* the plaintiffs' ERISA plan was "distress terminated" and had fallen under the management of the Pension Benefit Guaranty Corporation ("PBGC") acting as a trustee. *Paulsen*, 559 F.3d at 1066. We noted that the PBGC was controlled by a "complex priority scheme" in paying benefits, and it was under no obligation to pay the plaintiffs any money above a statutory minimum. *Id*. at 1073.

In *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123 (9th Cir. 2006), the plaintiffs, who were prescription drug plan participants, claimed that their success in an ERISA lawsuit regarding drug costs would cause the plan administrators to lower co-payment or contribution amounts. *Id*. at 1125. The link between the plaintiffs' claims and possible recovery in *Glanton* was more attenuated than are Harris's claims here, because the *Glanton* plaintiffs relied not directly on fiduciary recovery but on the assumption that the defendants would voluntarily change co-payment requirements. *See id*.

**[6]** We agree with the First, Fourth, and Seventh Circuits that there is no lack of redressability merely because a plaintiff 's recovery under Section 502(a)(2) might first go to the defined contribution plan rather than directly to the plaintiff. We hold that a plaintiff who has cashed out of a defined contribution ERISA plan has standing under Article III to assert Section 502(a)(2) claims relating to that plan.

**[7]** In summary, we reject Defendants' arguments that Harris lacks either statutory or constitutional standing. We follow our precedent in *Vaughn* and hold that a former employee who has voluntarily withdrawn his or her assets from a defined contribution ERISA plan has statutory standing as a "participant" of that plan. That employee has standing to assert claims for breach of fiduciary duty under section 502(a)(2) of ERISA even if claims under Section § 502(a)(1)(B) are also available. We also hold that Section 502(a)(2) claims on a defined contribution plan to recover losses occasioned by a breach of fiduciary duty are redressable and meet the constitutional standing requirements of Article III. Accordingly, we reverse the district court's dismissal of Harris's claims on standing grounds.

## C

**[8]** Both plaintiffs challenge the district court's decision to deny them leave to amend their Complaint. Plaintiffs seek through amendment to cure any defects in their allegations against the individual defendants,**[6]** and properly to name the

---

**[6]**The district court determined that the Complaint made insufficient factual allegations that the individual defendants were fiduciaries of Ramos's ERISA plan. *See Pegram v. Herdrich*, 530 U.S. 211, 226 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether [the defendant] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint."). We agree with the district court that the Complaint does not contain factual allegations against the individual defendants sufficient "to

misidentified fiduciaries of the Amgen and Manufacturing Plans. Dismissal without leave to amend is improper unless it is "clear" that "the complaint could not be saved by any amendment." *Lee v. City of Los Angeles*, 250 F.3d 668, 692 (9th Cir. 2001) (quotation omitted); *see also Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 726 (9th Cir. 2000) (holding that the district court abused its discretion in denying an ERISA plaintiff leave to amend because "amendment would allow [the plaintiff] to state a legally cognizable claim for breach of fiduciary duty"). We agree with Plaintiffs that the district court erred by not granting leave to amend.

**[9]** We do not believe that it can be fairly said that the Complaint cannot be saved by amendment. The district court denied Harris leave to amend because it had determined that Harris lacked standing and thus could not allege a valid claim. Because we have held that Harris has statutory and constitutional standing, we also conclude that Harris should be allowed to amend his claims in the Complaint to challenge the proper defendants and to present any viable claim. Both plaintiffs also should be allowed to amend their claims against the individual defendants because it is not "clear" that Plaintiffs cannot save their Complaint by adding sufficient factual allegations supporting their claims that the individual defendants were fiduciaries of the Amgen or Manufacturing Plans. *Lee*, 250 F.3d at 692.

Plaintiffs' remaining claims were dismissed because they misidentified the proper fiduciary defendants. Although Plaintiffs did not name the Fiduciary Committee as a defendant, they did name a Retirement Benefits Committee, which they

raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *id.* (stating that to survive a motion to dismiss, a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *see also Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1953 (2009) (holding that the pleading requirements stated in *Twombly* apply to "all civil actions").

thought served the same fiduciary functions. Also, Plaintiffs identified Amgen as the named fiduciary of the Manufacturing Plan, when in fact Amgen Manufacturing is the named fiduciary of that plan. In both cases, Plaintiffs would have sued the proper fiduciary but for a misidentification of the correct defendant, and their claims against Amgen Manufacturing and the Fiduciary Committee can be saved by amendment. *See Bowles v. Reade*, 198 F.3d 752, 758-59 (9th Cir. 1999) (reversing denial of leave to amend when the defendant to be added by the amendment "knew or should have known that, but for the mistaken identification, she would be a proper party defendant in the action").

**[10]** We conclude that Plaintiffs are entitled by law to amend their Complaint to assert claims against the proper fiduciaries of the Amgen and Manufacturing Plans. A sound theory of pleading should normally permit at least one amendment of a complex ERISA complaint that has failed to state a claim where, as here, the Plaintiffs might be expected to have less than complete information about the defendants' organization and ERISA responsibilities, where there is no meaningful evidence of bad faith on the part of the plaintiffs, and where there is no significant prejudice to the defendants. We reverse the district court's denial of leave to amend.

## III

Fiduciaries of an ERISA defined contribution plan who breach their fiduciary duty might cause employees to receive fewer benefits from their plans than they would have received absent the breach. This is true even if the employees later withdraw their assets from the plan. We conclude that former employees who have voluntarily withdrawn assets from their ERISA defined contribution plans have statutory and Article III standing to assert fiduciary claims against Plan fiduciaries under ERISA § 502(a)(2), regardless of whether a separate remedy is available under ERISA § 502(a)(1)(B). We also conclude that any defects in Plaintiffs' Section 502(a)(2)

Complaint possibly can be cured through amendment. We reverse the district court's dismissal of Plaintiffs' Complaint, and we remand for proceedings consistent with this opinion.

**REVERSED and REMANDED.**