# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-19-00185-CV

---

**Texas Department of Insurance, Appellant**

**v.**

**Texas Association of Health Plans, Appellee**

---

**FROM THE 419TH DISTRICT COURT OF TRAVIS COUNTY**
**NO. D-1-GN-18-003846, THE HONORABLE DARLENE BYRNE, JUDGE PRESIDING**

---

### O P I N I O N

In this interlocutory appeal, the Texas Department of Insurance (the Department) challenges the trial court's denial of the Department's plea to the jurisdiction on two claims brought by the Texas Association of Health Plans (the Association): (1) a claim under the Administrative Procedure Act (APA), *see* Tex. Gov't Code § 2001.038, seeking to invalidate certain Department rules as "invalid exercises of [the Department's] statutory authority" to regulate certain health plans (the APA Claim); and (2) an alternative claim under the Uniform Declaratory Judgments Act (UDJA), *see* Tex. Civ. Prac. & Rem. Code §§ 37.001–.011, seeking to invalidate certain Texas Insurance Code provisions that "authoriz[e] out of network payments at 'usual and customary rates'" as "unconstitutional delegations of state authority to self-interested private entities" (the UDJA Claim). The Department argues that sovereign immunity bars these claims. We disagree and affirm.

## BACKGROUND

The Association is "a not-for-profit trade association representing the legal and financial interests of licensed Texas health insurers, health maintenance organizations (HMOs) and other health plans licensed to operate in Texas" with a mission to "improve healthcare in Texas, including by improving the value and cost-effectiveness of healthcare services covered by its members' plans." In 2018, the Association sued the Department, raising its APA Claim and alternatively its UDJA Claim, asserting associational standing to bring claims on behalf of its members, and claiming that section 2001.038 waives sovereign immunity as to its APA Claim. The Department filed a plea to the jurisdiction, asserting that sovereign immunity barred the APA and UDJA Claims and challenging the Association's standing to bring the claims on behalf of its members. At an evidentiary hearing, the Association submitted affidavits from its members supporting associational standing, and the Department does not challenge the Association's standing in this interlocutory appeal. Following the hearing, the trial court denied the Department's plea to the jurisdiction. The Department timely appealed the order.

## STANDARD OF REVIEW

"Procedurally, the assertion of sovereign immunity implicates the trial court's jurisdiction and is properly asserted in a plea to the jurisdiction." *PHI, Inc. v. Texas Juvenile Justice Dep't*, No. 18-0099, ___ S.W.3d ___, 2019 WL 1873431, at *3 (Tex. Apr. 26, 2019) (citing *Houston Belt & Terminal Ry. v. City of Houston*, 487 S.W.3d 154, 160 (Tex. 2016); *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 91 (Tex. 2012)). When a plea challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case, construing the pleadings liberally in favor of the plaintiffs and looking to the

pleaders' intent. *Houston Belt & Terminal Ry.*, 487 S.W.3d at 160 (quoting *City of El Paso v. Heinrich*, 284 S.W.3d 366, 378 (Tex. 2009)). When the relevant jurisdictional facts are undisputed, as they are here, "the trial court rules on the plea to the jurisdiction as a matter of law." *PHI*, ___ S.W.3d at ___, 2019 WL 1873431, at *3 (quoting *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 227–28 (Tex. 2004)). We review the trial court's ruling on the plea de novo. *See id.*

## DISCUSSION

The Department raises two issues on appeal. First, the Department argues that sovereign immunity bars the Association from asserting its APA Claim. According to the Department, "section 2001.038 [] limits *who* may invoke its waiver of immunity" and does not waive sovereign immunity for a claim brought by an association to challenge the Department's rules on behalf of its members because the provision requires an allegation "that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege *of the plaintiff*." Tex. Gov't Code § 2001.038(a) (emphasis added). Second, although the UDJA waives sovereign immunity for constitutional challenges to statutes, the Department argues that the UDJA Claim is in effect a statutory construction claim that is barred by the redundant remedies doctrine and that even if it is a constitutional challenge to the statute, the Association did not sufficiently plead a viable constitutional claim.

### The APA Claim

The parties agree that section 2001.038 of the Texas Government Code is the only possible statutory basis for a waiver of the Department's sovereign immunity as to the Association's rule challenge in its APA Claim. In interpreting a statutory provision to determine

3

whether the legislature has waived sovereign immunity, we look to the text of the statute at issue to determine whether it contains a clear and unambiguous expression of waiver. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 696 (Tex. 2003) ("It is settled in Texas that for the Legislature to waive the State's sovereign immunity, a statute or resolution must contain a clear and unambiguous expression of the Legislature's waiver of immunity."); *see also* Tex. Gov't Code § 311.034 ("In order to preserve the legislature's interest in managing state fiscal matters through the appropriations process, a statute shall not be construed as a waiver of sovereign immunity unless the waiver is effected by clear and unambiguous language."). Here, the relevant statute reads:

> The validity or applicability of a rule, including an emergency rule adopted under Section 2001.034, may be determined in an action for declaratory judgment if it is alleged that the rule or its threatened application interferes with or impairs, or threatens to interfere with or impair, a legal right or privilege of the plaintiff.

Tex. Gov't Code § 2001.038(a). The Department does not dispute that "section 2001.038 is a grant of original jurisdiction and, moreover, waives sovereign immunity," *Machete's Chop Shop, Inc. v. Texas Film Comm'n*, 483 S.W.3d 272, 286 (Tex. App.—Austin 2016, no pet.) (quoting *Texas Logos, L.P. v. Texas Dep't of Transp.*, 241 S.W.3d 105, 123 (Tex. App.—Austin 2007, no pet.)), as to a suit brought by a plaintiff alleging that a rule interferes with or impairs *its* legal right or privilege. And the Department agrees that an association can challenge a rule under section 2001.038 if the association alleges interference with or impairment of *the association's* legal right or privilege. But, in what appears to be a novel interpretation of section 2001.038, the Department claims that the scope of the sovereign immunity waiver does not extend to an associational plaintiff alleging interference with or impairment of its members' legal rights or privileges. We disagree.

4

The term "plaintiff" refers to the party bringing suit. *See* Plaintiff, *Black's Law Dictionary* (11th ed. 2019) ("The party who brings a civil suit in a court of law."); Plaintiff, *Webster's Third New International Dictionary* 1729 (2002) (defining "plaintiff to mean "one who commences a personal action or lawsuit to obtain a remedy for an injury to his rights"; "the complaining party in any litigation"). The Department argues that since the Association is the party bringing suit, the Association must allege that the rule or its threatened application interferes with or impairs *its* legal right or privilege, not the legal right or privilege of its members. However, the United States Supreme Court has noted that "for the purpose of determining the scope of [an association's] rights as a litigant, the association 'and its members are in every practical sense identical'" and the modern concept of associational standing emerged out of this explanation. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551 (1996) (quoting *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 459 (1958)). Applying this same logic to the sovereign immunity context, we conclude that because an association's "rights as a litigant" are "in every practical sense identical" with "its members," an association that can satisfy associational standing requirements to challenge a rule under section 2001.038 would also be alleging that the rule or its threatened application interferes with or impairs the rights or privileges of the plaintiff, even if those rights or privileges are of the association's members.

We recognize that "standing and sovereign immunity are distinct jurisdictional concepts." *Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 745 (Tex. App.—Austin 2014, pet. dism'd). But with respect to section 2001.038, the Texas Supreme Court has instructed: "We treat [section 2001.038(a)]'s requirement as but another expression of the general doctrine of standing." *Finance Comm'n of Tex. v. Norwood¸* 418 S.W.3d 566, 582 n.83

5

(Tex. 2013). In *Norwood*, the Texas Supreme Court considered whether the plaintiffs sufficiently pleaded the requisite interest to bring suit. *Id.* at 582. The *Norwood* Court noted that the plaintiffs' pleadings tracked the language of section 2001.038(a) and that the provision "does not purport to set a higher standard than that set by the general doctrine of standing, and it cannot be lower, since courts' constitutional jurisdiction cannot be enlarged by statute." *Id.* at 582 n.83. Although *Norwood* did not specifically address the question of whether an association that met the requirements of associational standing also satisfied section 2001.038(a)'s requirements to challenge a rule, the *Norwood* Court spoke broadly and plainly as to how courts should treat section 2001.038(a)'s requirement.

After *Norwood* was decided, litigants argued before this Court that *Norwood* concerned statutory standing, not waiver of sovereign immunity. Nevertheless, we held:

> But while it is true that standing and sovereign immunity are distinct jurisdictional concepts, it remains that appellants' "sovereign immunity" challenge is rooted in the same "legal right or privilege" language that the *Norwood* court concluded, contrary to appellants' view, "does not purport to set a higher standard than that set by the general doctrine of standing." Additionally, we observe that the *Norwood* court did not characterize this issue as one of statutory "standing," but analyzed it in the more general terms of "the injury required by [APA section 2001.038] for judicial review," phraseology that equally contemplates a requirement for invoking the statute's waiver of sovereign immunity so as to permit "judicial review" of the challenged rules. Nor would any such labels be significant, in our view, given that the Texas Supreme Court considers sovereign immunity to implicate subject-matter jurisdiction—and to be susceptible of being raised for the first time on appeal—just as with standing issues. . . .

> [W]e cannot conclude that the above-quoted language leaves room for lower courts to conclude that the existing or threatened interference or infringement with a "legal right or privilege of the plaintiff" required by APA section 2001.038—whether viewed in terms of "standing" under the statute or of the sufficiency of pleadings or proof required to invoke the statute's waiver of sovereign immunity—is "a higher standing than that set by the general doctrine of standing."

*Balquinta*, 429 S.W.3d at 744–45 (footnotes and citations omitted). Following *Norwood* and *Balquinta*, we conclude that the language "legal right or privilege of the plaintiff" in section 2001.038 is "but another expression of the general doctrine of standing," *Norwood*, 418 S.W.3d at 582 n.83, whether viewed in terms of standing or waiver of sovereign immunity.

Since 1993, the general doctrine of standing in Texas law has included the associational standing test as articulated by the United States Supreme Court:

> [A]n association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit."

*Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 447 (Tex. 1993) (quoting *Hunt v. Washington State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977), and holding, "The United States Supreme Court has articulated a standard for associational standing that lends itself to our use. We adopt that test today."); *see also Brown Grp.*, 517 U.S. at 551 ("[F]or the purpose of determining the scope of [an association's] rights as a litigant, the association 'and its members are in every practical sense identical.'" (quoting *NAACP*, 357 U.S. at 459)); *Glanton ex rel. ALCOA Prescription Drug Plan v. AdvancePCS Inc.*, 465 F.3d 1123, 1127 (9th Cir. 2006) (noting that federal cases enunciating associational standing doctrine "turn on the fiction that an individual member authorizes the group to sue on his behalf"). Thus, an association that meets this associational standing test satisfies the general standing requirements that "[t]he plaintiff must be *personally* injured—he must plead facts demonstrating that he, himself (rather than a third party or the public at large), suffered the injury," *Heckman v. Williamson County*, 369 S.W.3d 137, 155 (Tex. 2012), even though the association was not "*personally* injured," *see*

*South Tex. Water Auth. v. Lomas*, 223 S.W.3d 304, 308 (Tex. 2007) (per curiam) (applying associational standing test); *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554–55 (Tex. 2000) (noting that "when a defendant asserts that a plaintiff organization does not have standing to assert claims on behalf of its members" then "a determination of associational standing is a prerequisite to the plaintiff's presentation of its substantive claims").[1]

Shortly after the Texas Supreme Court decided *Texas Association of Business* in 1993, the legislature codified into the Texas Government Code the predecessor to section 2001.038(a) without substantive change. *See* Act of May 4, 1993, 73d Leg., R.S., ch. 268, § 1, 1993 Tex. Gen. Laws 583, 739 (codified at Tex. Gov't Code § 2001.038(a)). The legislature is presumed to be "aware of relevant case law when it enacts or modifies statutes" and "'[a] statute is presumed to have been enacted by the legislature with complete knowledge of the existing law and with reference to it.'" *In re Allen*, 366 S.W.3d 696, 706 (Tex. 2012) (orig. proceeding) (quoting *Acker v. Texas Water Comm'n*, 790 S.W.2d 299, 301 (Tex. 1990)). Thus, when the legislature codified section 2001.038(a), it is presumed to have been aware that the Texas Supreme Court adopted the associational standing test in *Texas Association of Business* earlier that year; yet, the legislature did not change section 2001.038's "legal right or privilege of the plaintiff" language.

Moreover, since 1993, we have decided myriad cases without questioning the legislature's waiver of sovereign immunity when membership organizations have brought a rule

---

[1] The Department does not challenge the Association's ability to meet this test, and our review of the record—including the affidavits submitted at the evidentiary hearing as to how the Association's members risk being adversely affected by the rules at issue in this appeal—does not give us cause to conclude sua sponte that the Association lacked standing.

challenge under section 2001.038.**2** *See, e.g.*, *Texas Ass'n of Acupuncture & Oriental Med. v. Texas Bd. of Chiropractic Exam'r*s, 524 S.W.3d 734 (Tex. App.—Austin 2017, no pet.); *Texas Bd. of Chiropractic Exam'rs v. Texas Med. Ass'n*, No. 03-14-00396-CV, 2014 WL 7014530 (Tex. App.—Austin Dec. 8, 2014, pet. denied) (mem. op.); *Texas Ass'n of Psychological Assocs. v. Texas State Bd. of Exam'rs of Psychologists*, 439 S.W.3d 597 (Tex. App.—Austin 2014, no pet.); *Texas Soc. of Prof'l Eng'rs v. Texas Bd. of Architectural Exam'rs*, No. 03-08-00288-CV, 2008 WL 4682446, at *5 (Tex. App.—Austin Oct. 24, 2008, no pet.) (mem. op.); *Texas State Bd. of Podiatric Med. Exam'rs v. Texas Orthopaedic Ass'n*, No. 03-04-00253-CV, 2004 WL 2556917 (Tex. App.—Austin Nov. 12, 2004, no pet.) (mem. op.); *Texas State Bd. of Plumbing Exam'rs v. Associated Plumbing-Heating-Cooling Contractors of Tex., Inc.*, 31 S.W.3d 750, 752 (Tex. App.—Austin 2000, pet. dism'd by agr.); *Texas Alcoholic Beverage Comm'n v. Amusement & Music Operators of Tex., Inc.*, 997 S.W.2d 651, 656 (Tex. App.—Austin 1999, pet. dism'd w.o.j.). Although section 2001.038(a) and its substantially similar predecessor have been law

---

**2** We recognize that these cases do not necessarily implicate the merits of whether sovereign immunity was waived as to associations because the sovereign immunity issue was not joined. As the Texas Supreme Court recently noted, it has "been more guarded in [its] description of the interplay of jurisdiction and sovereign immunity," it "'does not equate immunity to a lack of subject-matter jurisdiction,'" and "'while a court is obliged to examine its subject-matter jurisdiction on its own in every case, we have never suggested that a court should raise immunity on its own whenever the government is sued.'" *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 751 (Tex. 2017) (quoting *Rusk State Hosp. v. Black*, 392 S.W.3d 88, 102 (Tex. 2012) (Hecht, J., concurring)). Nevertheless, in our precedent predating *Engelman*, we have noted that *Rusk* implies that sovereign immunity may be raised by an appellate court sua sponte. *See Texas Dep't of State Health Servs. v. Balquinta*, 429 S.W.3d 726, 745 (Tex. App.—Austin 2014, pet. dism'd) (citing *Texas State Bd. of Veterinary Med. Exam'rs v. Giggleman*, 408 S.W.3d 696, 707 n.18 (Tex. App.—Austin 2013, no pet.)). Regardless, although not precedential, we find support for our conclusion in these myriad cases as representative of the standard practice of associations to challenge agency rules under section 2001.038 to which both this Court and the legislature have remained silent as to sovereign immunity for over twenty years and to which the executive apparently has not challenged in this Court until now.

since 1975, the Department has not identified a single case in which sovereign immunity barred an association from bringing a rule challenge under section 2001.038(a) or its predecessor.

For all these reasons, we decline the Department's invitation in this appeal to interpret section 2001.038's waiver of sovereign immunity as excluding associations that satisfy the general standing doctrine. Because it is undisputed that the Association satisfied the requirements for associational standing, we overrule the Department's first issue.

**The UDJA Claim**

We now turn to the Department's second issue—whether sovereign immunity bars the UDJA Claim. In its live petition, the Association, citing *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454, 472 (Tex. 1997), described its UDJA Claim as follows:

> In the alternative, and only if the Court construes the statutes to require charges-based payments as described above, [the Association] seeks a declaration under the UDJA that Insurance Code Provisions authorizing out of network payments at "usual and customary rates" are unconstitutional delegations of state authority to self-interested private entities.

The Department appears to challenge this claim based on the pleadings, making three arguments for why sovereign immunity bars the Association's UDJA Claim.

First, the Department argues that the Association's UDJA Claim is in effect solely a statutory construction claim and that "the UDJA does not provide a waiver for bare statutory-construction claims." But the Association's live petition does not ask the trial court to construe the statutes under the UDJA; rather, the Association pleads the UDJA Claim in the alternative and "only if the Court construes the statutes" in a certain manner in evaluating its APA Claim. The UDJA Claim is for a declaration "that Insurance Code provisions authorizing out of network

10

payments at 'usual and customary rates' are unconstitutional delegations of state authority to self-interested private entities"—in other words, a constitutional challenge to the statute, not a statutory construction claim. *See Patel v. Texas Dep't of Licensing & Regulation*, 469 S.W.3d 69, 75–76 (Tex. 2015) (reaffirming rule that "sovereign immunity is inapplicable when a suit challenges the constitutionality of a statute and seeks only equitable relief").

Second, the Department asserts that the Association's UDJA Claim is redundant with its APA Claim and therefore is barred by the redundant remedies doctrine. *See id.* at 79 ("Under the redundant remedies doctrine, courts will not entertain an action brought under the UDJA when the same claim could be pursued through different channels. . . . When a plaintiff files a proceeding that only challenges the validity of an administrative rule, the parties are bound by the APA and may not seek relief under the UDJA because such relief would be redundant."). But the Association could not bring its UDJA Claim challenging the constitutionality of the relevant Texas Insurance Code provisions under section 2001.038 of the APA; thus, the redundant remedies doctrine does not bar the Association's UDJA claim. *See id.* at 80 ("Here the [plaintiffs] challenge both rules as defined by the APA and statutes. Because the [plaintiffs] cannot attack the constitutionality of the statutes pursuant to Section 2001.038 of the APA, their UDJA claims are not barred by the redundant remedies doctrine.").

Third, the Department argues that the Association "failed to assert a 'viable' constitutional theory that invokes the UDJA's waiver for statutory-validity claims." The Department admits that "[b]ecause [the Association] is pursuing a facial challenge, it is true that [the Association] was not obligated to allege facts demonstrating how the Insurance Code provisions operate in practice." Nevertheless, the Department claims that even though the Association cited "the seminal private-delegation case in its petition," "it failed to assert essential

11

facts" addressing *Boll Weevil*'s "eight-factor test to assess the validity of a private delegation of governmental authority." *See Boll Weevil*, 952 S.W.2d at 472. Relying on *Andrade v. NAACP of Austin*, 345 S.W.3d 1, 11 (Tex. 2011), the Department argues that the Association's "conclusory private-delegation claim falls woefully short of presenting a viable statutory-validity challenge to the four challenged Insurance Code provisions." We disagree.

The Texas Supreme Court has explained that "*Andrade* stands for the unremarkable principle that claims against state officials—like all claims—must be properly pleaded in order to be maintained, not that such claims must be viable on their merits to negate immunity" and that "our conclusion there simply followed a line of decision in which we held that claims were not viable due to basic pleading defects." *Patel*, 469 S.W.3d at 77 (citing *Andrade*, 345 S.W.3d at 13–14); *see Low v. Henry*, 221 S.W.3d 609, 612 (Tex. 2007) ("Texas follows a 'fair notice' standard for pleading, in which courts assess the sufficiency of pleadings by determining whether an opposing party can ascertain from the pleading the nature, basic issues, and the type of evidence that might be relevant to the controversy."); *Texas Educ. Agency v. American YouthWorks, Inc.*, 496 S.W.3d 244, 259 (Tex. App.—Austin 2016) ("We determine a claim's viability by considering the [plaintiffs'] pleadings in their favor and, *if necessary*, reviewing the entire record to determine if any evidence supports subject-matter jurisdiction." (emphasis added)), *aff'd sub nom. Honors Acad., Inc. v. Texas Educ. Agency*, 555 S.W.3d 54 (Tex. 2018). Here, the Association provided fair notice in its pleadings of the type of challenge it was bringing: a facial challenge to the specified Texas Insurance Code provisions "as unconstitutional delegations of state authority to self-interested private entities." *See FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 878 (Tex. 2000) ("Because we are reviewing the

12

statute under a facial challenge, [the statute]'s constitutionality depends on whether the statute as written, rather than as it operates in practice, passes the *Boll Weevil* factors.").

Nor do we see how the Association's facial constitutional challenge is unviable. The Department concedes that the Association asserts that the statutes delegate governmental authority to private entities but complains that the Association failed to analyze or address the specific *Boll Weevil* factors in its petition, even though none of the factors is dispositive. *See id.* at 875 (holding that "the importance of each factor will necessarily differ in each case"); *Boll Weevil*, 952 S.W.2d at 472 (describing eight factors). The Department offers no authority that a plaintiff is required to specifically address each of these eight factors in its pleadings to assert a delegation claim and an analysis of the *Boll Weevil* factors in a facial constitutional challenge primarily turns on the specific statutory and regulatory scheme, not on evidence and fact. *See, e.g.*, *FM Props.*, 22 S.W.3d at 880–88 (analyzing statutory and regulatory scheme to determine if *Boll Weevil* factors weigh for or against constitutionality of delegation). A plaintiff is required to plead facts sufficient to show a waiver of immunity under the UDJA; the plaintiff is not required to plead its legal arguments as to an analysis of the *Boll Weevil* factors. *Cf. Amadi v. City of Houston*, 369 S.W.3d 254, 262 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (concluding that plaintiff "sufficiently pleaded facts showing a waiver of immunity and that [the plaintiff] did not have to plead any legal argument as to the construction of subsection 101.106(b)").

Finally, even if the *Boll Weevil* factors were to weigh in favor of concluding that the statutes as written are constitutional, this would not make the Association's constitutional UDJA Claim unviable in our jurisdictional inquiry; rather, this would go to the claim's merits, which we generally do not reach in a plea to the jurisdiction. *See County of Cameron v. Brown*, 80 S.W.3d 549, 555 (Tex. 2002) ("In deciding a plea to the jurisdiction, a court may not weigh

the claims' merits but must consider only the plaintiffs' pleadings and the evidence pertinent to the jurisdictional inquiry."); *Blue*, 34 S.W.3d at 554 ("A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit."); Viable, *Black's Law Dictionary* (11th ed. 2019) ("Capable of succeeding."). This is not the type of viability challenge that courts have considered that would make a claim *incapable* of succeeding—for example, when "a litigant's couching its requested relief in terms of declaratory relief does not alter the underlying nature of the suit" and "sovereign immunity will bar an otherwise proper [U]DJA claim that has the effect of establishing a right of relief against the State for which the Legislature has not waived sovereign immunity." *Texas Parks & Wildlife Dep't v. Sawyer Tr.*, 354 S.W.3d 384, 388 (Tex. 2011); *see, e.g., Spence v. State*, No. 03-17-00685-CV, 2019 WL 1868841, at *5 (Tex. App.—Austin Apr. 26, 2019, pet. denied) (mem. op.) (concluding that because other courts "have exclusive jurisdiction over the substance of the various aspects of appellants' ultimate claim for relief" for compensation, appellants "did not plead a viable UDJA claim to establish the trial court's subject matter jurisdiction over those claims"). We therefore disagree with the Department that the Association did not plead a viable constitutional claim.

For these reasons, we overrule the Department's second issue.

## CONCLUSION

Having overruled the Department's issues, we affirm the trial court's denial of the Department's plea to the jurisdiction.

14

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed:   March 5, 2020