The ISLAND GROUP, INC., Plaintiff,

v.

SWIMWAYS CORPORATION, Pacific Souvenir Group, Inc., dba Hawaii Intercontinental Corporation, Nicholas Corish and Gerald Sur, Defendants.

Civil No. 13–00094 LEK–RLP.

United States District Court, D. Hawai'i.

June 21, 2013.

Christopher D. Mickus, Lawrence E. James, Jr., Lee J. Eulgen, Neal Gerber & Eisenberg LLP, Chicago, IL, Louise K.Y. Ing, Michelle N. Comeau, Alston Hunt Floyd & Ing, Honolulu, HI, for Plaintiff.

Bethany C.K. Ace, James C. McWhinnie, Damon Key Leong Kupchak Hastert, Jonathan L. Ortiz, Ortiz & Katano, Randall Y. Yamamoto, Tracie Mariko Kobayashi, Kawashima Lorusso, LLP, Robert P. Richards, Hughes Richards & Associates, Honolulu, HI, for Defendants.

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT SWIMWAYS CORPORATION'S MOTION TO DISMISS AND DENYING PLAINTIFF'S MOTION TO DISMISS COUNTS II AND III OF DEFENDANT SWIMWAYS CORPORATION'S COUNTERCLAIM

LESLIE E. KOBAYASHI, District Judge.

Before this Court are: Defendant SwimWays Corporation's ("SwimWays") Motion to Dismiss ("the SwimWays Motion"), filed on March 18, 2013; [dkt. no. 12;] Plaintiff the Islander Group, Inc.'s ("TIG") Motion to Dismiss Counts II and III of Defendant SwimWays Corporation's Counterclaim ("the TIG Motion"), filed on April 1, 2013; [dkt. no. 28;] Defendant Pacific Souvenir

Group, Inc.'s ("HIC"),[1] joinder in the SwimWays Motion, filed on May 13, 2013; [dkt. no. 45;] and Defendant Gerald Sur's ("Sur") joinder in the SwimWays Motion, filed on May 13, 2013 [dkt. no. 51]. TIG and SwimWays each filed a memorandum in opposition on May 13, 2013. [Dkt. nos. 48, 49.] SwimWays and TIG each filed a reply in support of its respective motion on May 20, 2013. [Dkt. nos. 55, 56.]

These matters came on for hearing on June 3, 2013. Appearing on behalf of SwimWays were James McWhinnie, Esq., and Jonathan Ortiz, Esq., and appearing on behalf of TIG were Christopher Mickus, Esq., and Michelle Comeau, Esq. Appearing on behalf of HIC was Brian Hiyane, Esq., and appearing on behalf of Sur was Cary Tanaka, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, the SwimWays Motion is HEREBY GRANTED IN PART AND DENIED IN PART and the TIG Motion is HEREBY DENIED for the reasons set forth below.

### BACKGROUND

TIG is a Hawai'i company with its principal place of business in Hawai'i. "TIG is engaged in the business of offering general and recreational merchandise and gift products for sale through mail order, catalogue, the internet and through direct sales to retails" such as Walmart, Kmart, Safeway, KTA Superstores ("KTA"), Amazon.com, and barnesandnoble.com. [Notice of Removal, filed 2/27/13 (dkt. no. 1), Decl. of James C. McWhinnie ("McWhinnie Removal Decl."), Exh. A ("Complaint") at ¶ 5.] SwimWays is a Virginia corporation with its principal place of business in Virginia. It manufactures leisure and recreational water products, including the

1. Pacific Souvenir Group, Inc. does business as Hawaii Intercontinental Corporation.

COOP Hydro Ball, a neoprene sport ball. HIC distributes SwimWays's COOP products to retailers in Hawaii. [McWhinnie Removal Decl., Exh. E ("SwimWays Answer") at ¶ 6.] Defendant Nicholas Corish ("Corish") and Sur are HIC sales representatives. [Complaint at ¶¶ 8–9; Defendant Nicholas Corish's Answer to Complaint Filed January 11, 2013, filed 3/6/13 (dkt. no. 9) ("Corish Answer"), at ¶ 6; Defendant Gerald Sur's Answer to Complaint Filed on January 11, 2013 in the Circuit Court of the First Circuit, State of Hawaii, filed 3/4/13 (dkt. no. 7) ("Sur Answer"), at ¶ 1.a.] The Complaint asserts that TIG and SwimWays are competitors in the recreational sports products market, and they attempt to sell their products in many of the same Hawaii stores. [Complaint at ¶ 11.]

SwimWays sent a letter to TIG on or about August 7, 2012 which asserted that: 1) TIG's "Go Lolo" balls infringed on SwimWays's United States Patent Number 5,997,422 ("the '422 Patent");[2] and 2) other TIG products infringed on SwimWays's trade dress in SwimWays's COOP flying disc and paddle products. [Id. at ¶ 12; SwimWays Answer at ¶ 11.] Almost immediately thereafter, HIC began contacting TIG's customers and informing them either that TIG's "Go Lolo" balls infringed on SwimWays's '422 Patent or that TIG was otherwise infringing on SwimWays's patents. HIC also told TIG's customers that TIG was involved in patent litigation regarding products TIG supplied to its customers. [Complaint at ¶ 13.]

TIG alleges that, on or about August 15, 2012, Corish informed Robin Cotter, who was a TIG employee at the time, that it was Corish's responsibility to inform stores carrying the TIG's "Go Lolo" balls of the infringement. Corish stated that he had already left a message about the matter for the KTA buyer. Around the same time, Cotter also learned from the Kmart department manager that Corish had informed Kmart of the alleged infringement. On or about August 16, 2012, TIG's sales representative in Hawaii received an email from the KTA buyer instructing TIG to remove the "Go Lolo" balls from KTA shelves in light of Corish's telephone call. TIG complied. Prior to that point, TIG and KTA's business relationship had lasted almost twenty years. [Id. at ¶¶ 14–18.] TIG alleges that HIC's sales representatives defamed TIG in the same manner to buyers for Don Quijote and Beach Side Casuals, two of TIG's customers. [Id. at ¶¶ 19–21.]

TIG denies that it committed the alleged infringement and states that it is not a defendant in any patent litigation with SwimWays. TIG alleges that the statements by HIC and its employees were false and were made with the intent to harm TIG and/or to interfere with TIG's existing and future business relationships. TIG also alleges that SwimWays and HIC conspired together to defame TIG and interfere with TIG's potential business relationships. [Id. at ¶¶ 22–24.]

On August 20, 2012, TIG sent a letter to SwimWays's counsel demanding that SwimWays and its agents immediately cease and desist from the defamation and interference. [Id. at ¶ 25, Exh. A.] That same day, SwimWays's counsel responded with a letter disavowing any knowledge of or responsibility for Corish's defamatory statements. [Complaint at ¶ 26, Exh. B.]

In an August 22, 2012 letter, counsel for SwimWays denied that Corish was an employee, representative, or agent of SwimWays. [Complaint at ¶ 27, Exh. C.] On

---

**2.** A copy of the '422 Patent, titled "Waterproof Game Ball", is attached to the Swim-

Ways Answer as Exhibit A. [Dkt. no. 1–6 at 25–33.]

August 23, 2012, counsel for TIG sent a letter to HIC demanding that HIC and its employees, including Corish, immediately cease and desist from the defamation and interference. [Complaint at ¶ 28, Exh. D.] In a letter dated August 27, 2012, counsel for HIC denied TIG's allegations, but stated that "HIC instructed its sales team, including Mr. Corish, not to state that the Islander Group is a defendant in a patent infringement lawsuit, and not to state that the Islander Group willfully and illegally copied SwimWays' products." [Complaint at ¶ 29, Exh. E.]

In a September 18, 2012 letter, TIG's counsel informed SwimWays that there was no merit to the claims of alleged infringement of the ′422 Patent and the claims of alleged infringement of SwimWays's trade dress ("9/18/12 TIG Letter"). [Complaint at ¶ 30, Exh. F.] After this explanation, and in light of SwimWays's failure to respond to the 9/18/12 TIG Letter, TIG believed the matter had been resolved. According to TIG, SwimWays continued to interfere with TIG's relationships with its customers. [Complaint at ¶¶ 31–32.] On or about November 28, 2012, SwimWays sent letters to TIG customers, including KTA, Don Quijote, and Times Supermarkets ("11/28/12 SwimWays Letters"). The letters stated that SwimWays understood that those stores purchased, or were considering the purchase of, products that were similar to SwimWays's COOP products. SwimWays stated that its products were protected under federal intellectual property laws, including the ′422 Patent and trade dress laws. The letters stated that SwimWays was primarily pursuing its legal remedies against the companies making the infringing products, but that SwimWays reserved the right to pursue remedies against the stores if they continued to purchase infringing products. [Id. at ¶ 33, Exh. G (example of 11/28/12 SwimWays Letters).]

TIG asserts that these statements were false and misleading, and TIG denies committing the alleged infringement. TIG acknowledges that the 11/28/12 SwimWays Letters did not mention TIG by name, but TIG emphasizes that the letters were sent to TIG customers. TIG also argues that the letters must be viewed in light of the prior efforts to defame TIG. After receipt of their 11/28/12 SwimWays Letters, KTA and Don Quijote required TIG to remove all of TIG's products from their stores' shelves. [Complaint at ¶¶ 34–37.] KTA's December 3, 2012 email to TIG specifically referenced KTA's 11/28/12 SwimWays Letter. [Id., Exh. H.] TIG characterizes SwimWays's infringement claims as "baseless". [Complaint at ¶ 38.]

The Complaint alleges the following claims: defamation against HIC ("Count I"); defamation against Corish ("Count II"); defamation against Sur ("Count III"); tortious interference with business relations or expectancy against HIC ("Count IV"); tortious interference with business relations or expectancy against SwimWays ("Count V"); conspiracy against HIC and SwimWays ("Count VI"); and unfair methods of competition ("UMOC"), in violation of Haw.Rev.Stat. Chapter 480, against all of the defendants ("Count VII"). The Complaint prays for compensatory and punitive damages, interest, attorneys' fees and expenses, and any other appropriate relief.

SwimWays's Answer asserted, *inter alia,* that TIG's claims were preempted, in whole or in part, by federal law, including the Patent Act, 35 U.S.C. § 1 *et seq.* [SwimWays Answer at pg. 11.] SwimWays's Counterclaim alleges that TIG's use of SwimWays's trade dress creates a substantial likelihood that consumers will be confused by TIG's products and will purchase TIG's products believing they are

SwimWays's products. [*Id.*, Counterclaim at ¶ 19.]

SwimWays's Counterclaim alleges the following claims: infringement of the '422 Patent by TIG's Game Balls, in violation of the Patent Act, 35 U.S.C. § 1 *et seq.* ("Counterclaim Count I"); trade dress infringement and unfair competition by TIG's Flying Disc, in violation of the Lanham Act, 15 U.S.C. § 1125(a) ("Counterclaim Count II"); and trade dress infringement and unfair competition by TIG's Paddle Game, in violation of § 1125(a) ("Counterclaim Count III").

SwimWays's Counterclaim seeks the following relief: preliminary and permanent injunctions against the alleged infringing acts; a judgment that the '422 Patent is valid; judgments that TIG is liable for infringing the '422 Patent and SwimWays's trade dress; a judgment that TIG is liable for unfair competition; an accounting for damages; interest; lost profits and/or a reasonable royalty; a finding that TIG's actions were willful and intentional, warranting an award of enhanced damages pursuant to 35 U.S.C. § 284 and 15 U.S.C. § 1117(a); a finding that this is an exceptional case, warranting an award of attorneys' fees pursuant to 35 U.S.C. § 285, § 1117 or other authority; costs; and any other appropriate relief.

On April 1, 2013, TIG filed its Answer to SwimWays's Counterclaim, including its own Counterclaim. TIG asserts the following: a claim for a declaratory judgment of non-infringement of the '422 Patent ("TIG's Counterclaim Count I"); and a claim for a declaratory judgment that the '422 Patent is invalid ("TIG's Counterclaim Count II"). TIG's Counterclaim seeks the following relief: dismissal of Count I of SwimWays's Counterclaim with prejudice; a declaratory judgment that TIG did not infringe the '422 Patent; a declaratory judgment that the '422 Patent is invalid; a finding that this is an exceptional case, warranting an award of attorneys' fees pursuant to 35 U.S.C. § 285; and any other appropriate relief.

## I. *The SwimWays Motion*

In the SwimWays Motion, SwimWays seeks the dismissal of TIG's claims against SwimWays in Counts V, VI, and VII of the Complaint. [SwimWays Motion at 2.] SwimWays argues that all of these claims are preempted by federal law because they are based on actions SwimWays took in a good faith attempt to protect its intellectual property rights. In the alternative, SwimWays argues that these claims are not sufficiently pled. [Mem. in Supp. of SwimWays Motion at 1–2.] SwimWays does not appear to dispute TIG's submission of the relevant correspondence between them. SwimWays acknowledges sending the 11/28/12 SwimWays Letters, but it emphasizes that the letters do not mention TIG or TIG's products. [*Id.* at 4–5.]

SwimWays asserts that this Court should dismiss Counts V, VI, and VII because " 'federal patent law preempts state-law tort liability for a patentholder's good faith conduct in communications asserting infringement of its patent and warning about potential litigation.' " [*Id.* at 8–9 (citations omitted).] SwimWays notes that a plaintiff's claims will not be preempted if he pleads, and then proves, that the defendant's actions were in bad faith, even if bad faith is not an element of the underlying state law claim. SwimWays argues that TIG's Complaint does not sufficiently plead allegations that SwimWays acted in bad faith. [*Id.* at 10–12.]

SwimWays acknowledges that paragraph 24 of the Complaint alleges that SwimWays's claims of infringement were "baseless". SwimWays, however, argues that this allegation is not enough to sur-

vive a motion to dismiss because there are no supporting factual assertions. TIG has only pled facts showing that it believed SwimWays's allegations were without merit, but that is not enough to plead bad faith, even if a court ultimately finds that the '422 Patent is invalid. [*Id.* at 13–14.]

SwimWays therefore alleges that TIG has failed to sufficiently plead its state law claims against SwimWays, and SwimWays urges this Court to dismiss Counts V, VI, and VII.

### A. *The TIG Memorandum in Opposition*

In TIG's memorandum in opposition to the SwimWays Motion ("TIG Memorandum in Opposition"), TIG emphasizes that a patentee's right to enforce his patent is not absolute; it is a conditional privilege that may be lost if the patentee acts in bad faith while enforcing the patent. TIG asserts that the advancement of baseless infringement claims to disrupt a competitor's business relationships necessarily constitutes bad faith and negates the conditional privilege. Asserting infringement claims with reckless disregard for the accused party's rights or knowingly making false statements also constitute bad faith. [TIG Mem. in Opp. at 7–9.]

TIG argues that it has pled sufficient allegations of bad faith. The Complaint alleges actions by HIC, SwimWays's distributor, and by Corish and Sur, to disseminate false information alleging violations of SwimWays's patent and trade dress rights. TIG argues that it is plausible that SwimWays instructed HIC, Corish, and Sur to disseminate the false information in order to interfere with TIG's business relationships. TIG asserts that HIC, Corish, and Sur would have no incentive to do so if they had not been acting pursuant to SwimWays's instruction. TIG points out that Corish stated in his Rule 16 Scheduling Conference Statement that SwimWays conveyed the information about the alleged infringement to HIC, and HIC instructed Corish on what to do with the information in the marketplace. TIG also notes that Corish is copied on an email from one of TIG's customers to TIG about the alleged infringement, even though Corish had no business relationship with either TIG or the customer. [*Id.* at 9–10 (citing dkt. no. 14, filed 3/22/13, at 2; Complaint, Exh. H).]

TIG also argues that it has sufficiently pled bad faith because the Complaint asserts that SwimWays knew TIG was not a defendant in a patent lawsuit and knew TIG was not willfully infringing SwimWays's intellectual property rights in light of the 9/18/12 TIG Letter. At a minimum, the 9/18/12 TIG Letter is evidence that SwimWays was acting with reckless disregard of TIG's rights, particularly in light of the fact that SwimWays never responded to the letter and continued to disparage TIG after receiving the letter. [*Id.* at 10–12.]

TIG contends that a plaintiff does not need to have tangible, concrete evidence of bad faith in order to survive a motion to dismiss because such evidence usually will not be available prior to discovery. TIG therefore asserts that bad faith arguments are more appropriate for the summary judgment stage rather than on a motion to dismiss. TIG argues that the relevant case law regarding sufficiency at the pleading stage supports TIG's position that the Complaint is sufficient. TIG also emphasizes that, if it is able obtain discovery confirming that SwimWays instructed HIC, Corish, and Sur to disseminate false information about TIG, the conditional privilege will not apply because it is only applicable to communications with potential infringers. [*Id.* at 13–16.]

Finally, TIG argues that the conditional privilege SwimWays relies upon does not

apply to SwimWays's conduct regarding its trade dress rights. TIG emphasizes that its three claims against SwimWays are based upon both the purported enforcement of SwimWays's patent rights and the purported enforcement of Swim-Ways's trade dress rights. TIG need not plead bad faith as to the purported enforcement of SwimWays's trade dress rights. [*Id.* at 16–17.]

TIG therefore urges this Court to deny the SwimWays Motion.

### B. *The SwimWays Reply*

In its reply in support of the SwimWays Motion ("SwimWays Reply"), SwimWays contends that, in order to survive a motion to dismiss, TIG had to plead that Swim-Ways had no reasonable basis to believe that TIG infringed SwimWays's patent rights. According to SwimWays, TIG did not do this. SwimWays emphasizes that there is a presumption that, when a patent holder asserts a duly granted patent, it does so in good faith. SwimWays argues that TIG failed to present factual allegations that would support a finding of bad faith; TIG merely asks this Court to infer bad faith. Neither SwimWays's failure to respond to the 9/18/12 TIG Letter nor the 11/28/12 SwimWays Letters are sufficient to plead bad faith. SwimWays emphasizes that the 11/28/12 SwimWays Letters did not make derogatory comments about TIG, nor did the letters ask SwimWays's customers to stop selling TIG's products; the decision whether to stop selling the infringing products was left to the customers. [SwimWays Reply at 2–6.]

As to TIG's argument that bad faith allegations should be tested at the summary judgment stage instead of in a motion to dismiss, SwimWays argues that TIG is not entitled to proceed to the summary judgment stage because TIG failed to sufficiently plead bad faith and there-fore did not state a claim upon which relief can be granted. [*Id.* at 6–7.]

As to TIG's argument regarding the infringement of SwimWays's trade dress, SwimWays argues that trade dress rights are also protected by the conditional privilege. Further, SwimWays argues that the same policy rationale allowing good faith patent protection also applies to the protection of other types of intellectual property. [*Id.* at 7–8.]

SwimWays therefore urges this Court to grant the SwimWays Motion.

### II. *The TIG Motion*

In the TIG Motion, TIG argues that this Court should dismiss SwimWays's counter-claims alleging violation of SwimWays's trade dress because they are insufficiently pled.

TIG emphasizes that trade dress encompasses the total image of a product, including, but not limited to, size, shape, color, texture, and graphic design. Thus, to survive a motion to dismiss, a claim alleging trade dress infringement must plead the character and scope of the trade dress with precision, and must specify whether it is the individual elements that are protectable or the composite effect of the elements as a whole. This is necessary in order to give the defendant sufficient notice of the claim. [TIG Reply at 3–4.]

TIG argues that this Court must dismiss Counterclaim Count II, regarding Swim-Ways's Flying Discs, because, although the count alleges the trade dress consists of a certain style and shape, it also alleges the trade dress is not limited to that style and shape. SwimWays failed to identify with specificity the other styles and shapes covered by the Flying Discs' trade dress. TIG argues that it should not be forced to guess what is covered by the protectable trade dress. [*Id.* at 6.]

TIG argues that this Court must dismiss Counterclaim Count III, regarding Swim-Ways's paddle products, because the claim does not even describe the paddles' size, shape, color, texture, or graphics. Like the Flying Disc claim, Counterclaim Count III suggests that there are other unspecified characteristics covered by the trade dress. In addition, TIG argues that merely attaching a picture of SwimWays's paddles is not sufficient to cure pleading deficiencies, and TIG is still left to guess about the nature of SwimWays's claim. [*Id.* at 7–8.]

TIG therefore urges this Court to grant the TIG Motion and dismiss Counterclaim Counts II and III.

### A. *The Swimways Memorandum in Opposition*

In its memorandum in opposition to the TIG Motion ("SwimWays Memorandum in Opposition"), SwimWays argues that Counterclaim Counts II and III, viewed together with the exhibits, are sufficient to provide notice to TIG. If this Court is inclined to grant the TIG Motion, Swim-Ways argues that this Court should give SwimWays leave to amend its Counterclaim.

SwimWays argues that there is no requirement that trade dress infringement claims be pled with specificity; it is only required to plead that "its trade dress is (1) non-functional; (2) either inherently distinctive or has acquired secondary meaning; and (3) likely to be confused with Islander Group's products by the consuming public." [SwimWays Mem. in Opp. at 4–5 (citations omitted).] SwimWays argues that its narrative descriptions of its flying disc products and paddle board products, together with the pictures that SwimWays submitted with its Answer and Counterclaim, are sufficient to put TIG on notice and to overcome a motion to dismiss. [*Id.* at 5–6.]

SwimWays therefore urges this Court to deny TIG's Motion. If this Court is inclined to grant TIG's Motion, SwimWays argues that this Court should grant leave to amend. [*Id.* at 9–10.]

On May 13, 2013, HIC filed a joinder in the SwimWays Memorandum in Opposition. [Dkt. no. 50.]

### B. *The TIG Reply*

In its reply in support of the TIG Motion ("TIG Reply"), TIG largely reiterates the arguments in the TIG Motion. Further, TIG points out that the photographs attached to SwimWays's Counterclaim depict, *inter alia,* six similar, but different paddle products. The paddles have different colors, features, materials, textures, and graphics. TIG argues that SwimWays must specify which particular features, or which composite of multiple features, are protectable trade dress. TIG asserts that SwimWays has failed to do so, and therefore SwimWays's counterclaims do not provide sufficient notice to TIG. [TIG Reply at 4.]

TIG reiterates that SwimWays failed to describe the elements of the two trade dresses at issue with sufficient specificity. [*Id.* at 6.] TIG notes that SwimWays failed to respond to TIG's argument that Swim-Ways's use of the phrase "not limited to" renders the alleged trade dress claims too open-ended to withstand a motion to dismiss. [*Id.* at 7.]

TIG therefore urges this Court to grant the TIG Motion and dismiss Counterclaim Counts II and III.

### STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for

"failure to state a claim upon which relief can be granted[.]"

Under Rule 12(b)(6), review is generally limited to the contents of the complaint. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001)....

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. *Fed'n of African Am. Contractors v. City of Oakland,* 96 F.3d 1204, 1207 (9th Cir.1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 554, 127 S.Ct. 1955).

*Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.,* 693 F.Supp.2d 1192, 1195–96 (D.Hawai'i 2010).

This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint—"is inapplicable to legal conclusions." *Iqbal,* 129 S.Ct. at 1949. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. *Id.* at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." *Harris v. Amgen, Inc.,* 573 F.3d 728, 737 (9th Cir.2009) (citation and quotation marks omitted).

*Enriquez v. Countrywide Home Loans, FSB,* 814 F.Supp.2d 1042, 1055 (D.Hawai'i 2011) (some citations omitted).

SwimWays and TIG ask this Court to consider several exhibits attached to the Complaint, and SwimWays has attached the Complaint and the exhibits thereto to the SwimWays Motion. This district court has recognized that:

When a defendant attaches exhibits to a motion to dismiss, the court ordinarily must convert the motion into a summary judgment motion so that the plaintiff has an opportunity to respond. *Parrino v. FHP, Inc.,* 146 F.3d 699, 706 n. 4 (9th Cir.1998). However, a court "may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez,* 450 F.3d 445, 448 (9th Cir.2006). The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie,* 342 F.3d 903, 908 (9th Cir.2003).

*Yamalov v. Bank of Am. Corp.,* CV. No. 10–00590 DAE–BMK, 2011 WL 1875901, at *7 n. 7 (D.Hawai'i May 16, 2011).

## DISCUSSION

### I. *Preemption of Patent–Based Claims*

The first issue presented in the SwimWays Motion is whether TIG's state law claims against SwimWays are preempted by federal patent law because the conduct that forms the basis of those claims pur-

portedly occurred in the course of Swim-Ways's attempt to enforce its rights under the '422 Patent.

▌ To the extent that this case requires this Court to determine Swim-Ways's rights under the '422 Patent and whether TIG infringed those rights, the Federal Circuit would have jurisdiction over any appeal in this case. *See, e.g., Aoki v. Gilbert,* No. 2:11–cv–02797–MCE–CKD, 2013 WL 1156495, at *4 (E.D.Cal. Mar. 19, 2013).

> The Federal Circuit applies "the law of the regional circuit to which the district court appeal normally lies unless the issue pertains to or is unique to patent law, in which case [the Federal Circuit] appl[ies] [its] own law to both substantive and procedural issues intimately involved in the substance of enforcement of the patent right."

*Id.* (alterations in *Aoki* ) (some citations and internal quotation marks omitted) (quoting *Flex–Foot, Inc. v. CRP, Inc.,* 238 F.3d 1362 (Fed.Cir.2001)). "For issues not unique to patent law, [the Federal Circuit will] apply the law of the regional circuit in which this appeal would otherwise lie." *Sanofi–Aventis Deutschland GmbH v. Genentech, Inc.,* 716 F.3d 586, 590 (Fed. Cir.2013) (citations and quotation marks omitted). Federal Circuit law applies to the issue of whether federal patent law preempts a state law claim. *Ultra–Precision Mfg., Ltd. v. Ford Motor Co.,* 411 F.3d 1369, 1376 (Fed.Cir.2005).

▌ It is well-established that [s]tate tort claims against a patent holder, including tortious interference claims, based on enforcing a patent in the marketplace, are "preempted" by federal patent laws, unless the claimant can show that the patent holder acted in "bad faith" in the publication or enforcement of its patent. [*Zenith Elecs. Corp. v. Exzec, Inc.,* 182 F.3d 1340,] 1355

[ (Fed.Cir.1999) ]. As the Supreme Court said long ago, "Patents would be of little value if infringers of them could not be notified of the consequences of infringement, or proceeded against in the courts. Such action, considered by itself, cannot be said to be illegal." *Virtue v. Creamery Package Mfg. Co.,* 227 U.S. 8, 37–38, 33 S.Ct. 202, 57 L.Ed. 393 (1913).

*800 Adept, Inc. v. Murex Sec., Ltd.,* 539 F.3d 1354, 1369 (Fed.Cir.2008) (some citations omitted). In an appeal reviewing a jury's verdict on claims of patent infringement and tortious interference with business relationships, the Federal Circuit stated:

> The issue in this case is whether Adept presented to the jury sufficient facts, if believed, that a reasonable jury could find for Adept on the issue of Targus's bad faith. This "bad faith" standard has objective and subjective components. *Dominant Semiconductors Sdn. Bhd. v. Osram GMBH,* 524 F.3d 1254, 1260 (Fed.Cir.2008). The objective component requires a showing that the infringement allegations are "objectively baseless." *Globetrotter Software, Inc. v. Elan Computer Group, Inc.,* 362 F.3d 1367, 1375 (Fed.Cir.2004). The subjective component relates to a showing that the patentee in enforcing the patent demonstrated subjective bad faith. *See id.* Absent a showing that the infringement allegations are objectively baseless, it is unnecessary to reach the question of the patentee's intent. *See id.*

> Infringement allegations are objectively baseless if "no reasonable litigant could realistically expect success on the merits." *Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.,* 508 U.S. 49, 60, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *see also GP Indus., Inc. v. Eran Indus., Inc.,* 500 F.3d 1369,

1374 (Fed.Cir.2007); *Globetrotter,* 362 F.3d at 1375–76. To prove at trial that Targus's actions were objectively baseless, Adept was required to offer clear and convincing evidence that Targus had no reasonable basis to believe that its patent claims were valid or that they were infringed by Adept's customers. *See Golan v. Pingel Enter., Inc.,* 310 F.3d 1360, 1371 (Fed.Cir.2002). Because of the value placed on property rights, which issued patents share, *see* 35 U.S.C. § 261 ("[P]atents shall have the attributes of personal property."); *Consol. Fruit–Jar Co. v. Wright,* 94 U.S. 92, 96, 24 L.Ed. 68 (1876) ("A patent for an invention is as much property as a patent for land."); *Kearns v. Gen. Motors Corp.,* 94 F.3d 1553, 1555 (Fed.Cir. 1996) ("By statutory and common law, each patent establishes an independent and distinct property right."), and in light of the underlying jurisprudential basis for the bad faith standard, rooted as it is in Supreme Court cases and Constitutional principles, *see Globetrotter,* 362 F.3d at 1375–77, a party attempting to prove bad faith on the part of a patentee enforcing its patent rights has a heavy burden to carry.

*Id.* at 1370.

The requirements to plead bad faith in order to survive a motion to dismiss on preemption grounds are not as well established. This district court examined the preemption issue in *VDF FutureCeuticals, Inc. v. Sandwich Isles Trading Co.* and ruled that the counter claimant's state law claims of "tortious interference with existing contracts and prospective business advantage", "unfair methods of competition in violation of Haw.Rev.Stat. § 480–2", and "unfair and deceptive trade practices in violation of Haw.Rev.Stat. § 481A–3" were preempted under the bad faith standard. Civ. No. 11–00288 ACK–RLP, 2011 WL 6820122, at *12–13 (D.Hawaii Dec. 27,

2011). In that case, the district court ruled that the state law claims failed to the extent that they were derivative of the insufficiently pled claim for inequitable conduct. *Id.* at *12. Apart from the inequitable conduct claim, the state law claims were based solely on "allegations that VDF informed other parties of its intellectual property and associated rights." *Id.* at *13. The district court concluded that "[t]his conduct, as pleaded in the counterclaim, does not constitute bad faith, either objectively or subjectively." *Id. VDF FutureCeuticals* involved a "letter from VDF's counsel to XOWii, LLC … that merely 'draws [the recipient's] attention to' 35 U.S.C. § 154(d), which provides that a 'patent shall include the right to obtain a reasonable royalty' from an infringer of an ultimately issued patent who 'had actual notice of the published patent application.'" *Id.* at *8 (some alterations in *VDF FutureCeuticals* ) (quoting 35 U.S.C. § 154(d)(1)).

In the instant case, the Complaint alleges that SwimWays: sent a letter to TIG on August 7, 2012 claiming that certain TIG products violated SwimWays's '422 Patent and trade dress; [Complaint at ¶ 12;] failed to respond to the 9/18/12 TIG Letter, which asserted that SwimWays's patent infringement and trade dress allegations were meritless; [*id.* at ¶ 30, Exh. F (9/13/12 letter);] and sent the 11/28/12 SwimWays Letters to certain TIG customers advising them of SwimWays's rights and warning them of the possible consequences of purchasing products that infringed upon SwimWays's rights [*id.* at ¶ 33, Exh. G (11/28/12 letter to KTA) ]. TIG alleges additional actions by HIC, Corish, and Sur, and TIG argues that these actions should be imputed to SwimWays because HIC, Corish, and Sur are SwimWays's distributors and agents in Hawaii. [*Id.* at ¶ 61.] TIG also alleges

that SwimWays "acted in concert and conspired" with HIC, Corish, and Sur. [*Id.* at ¶ 24.]

Other than the facts that HIC is a SwimWays distributor and Corish and Sur are HIC employees, the Complaint presents no factual allegations to support the alleged conspiracy.[3] In fact, the Complaint acknowledges that SwimWays denied responsibility for and knowledge of Corish's actions. [*Id.* at ¶¶ 26–27, Exh. B (8/20/12 letter), Exh. C (8/22/12 letter).] The Complaint also acknowledges that the 11/28/12 SwimWays Letters did not specifically identify TIG. [*Id.* at ¶ 35.] Further, while the Complaint alleges that SwimWays's claims of patent and trade dress infringement were "baseless" and the Complaint states that TIG informed SwimWays that TIG believed the claims were "meritless[,]" [*id.* at ¶¶ 24, 30,] this alone is not enough to allege subjective bad faith on the part of SwimWays.

■ This Court concludes that TIG has failed to set forth sufficient allegations to raise a plausible claim that SwimWays directed, or was otherwise responsible for, the actions of HIC, Corish, and Sur. Without such a connection, the allegations of the Complaint do not sufficiently plead bad faith, either subjectively or objectively, by SwimWays. This Court therefore CONCLUDES that, to the extent TIG's claims against SwimWays are based upon SwimWays's actions relating to SwimWays's patent rights, TIG's claims are preempted by federal patent law. *See Zenith Elecs.,* 182 F.3d at 1355. The SwimWays Motion is GRANTED insofar as this Court DISMISSES the portions of Counts V, VI, and VII based on SwimWays's actions alleged-

ly taken in a good faith attempt to enforce SwimWays's patent rights.

TIG, however, asserts that it already has further information which it can incorporate into its claims to buttress the allegations of bad faith. Insofar as it appears that TIG can cure the defects in its claims by amendment, *see Harris,* 573 F.3d at 737, the dismissal is WITHOUT PREJUDICE.

## II. *Enforcement of SwimWays's Trade Dress Rights*

The SwimWays Motion also asks this Court to dismiss the portions of Counts V, VI, and VII which are based upon actions that SwimWays allegedly took in a good faith attempt to protect its trade dress rights. SwimWays contends that a conditional privilege exists for the protection of trade dress rights that is similar to the conditional privilege for actions to protect patent rights. The TIG Motion asks this Court to dismiss SwimWays's Counterclaim Counts II and III, which allege that TIG committed trade dress infringement and unfair competition. TIG asserts that Counterclaim Counts II and III are insufficiently pled.

Whether federal trade dress law preempts TIG's state law claims is not as clear as the question of patent law preemption. This Court therefore begins its analysis with the general legal principles of trade dress protection and the prosecution of trade dress infringement claims.

### A. *General Principles*

■ Trade dress protection under federal law is designed to promote competition. *TrafFix Devices, Inc. v. Mktg.*

---

**3.** TIG argues that Corish stated in his scheduling conference statement that SwimWays provided information about TIG's alleged infringement to HIC. This Court, however cannot consider such documents in a motion to dismiss without converting the motion to a motion for summary judgment. *See Yamalov,* 2011 WL 1875901, at *7 n. 7. This Court declines to do so.

*Displays, Inc.*, 532 U.S. 23, 28, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). Such protection, however, "must subsist with the recognition that in many instances there is no prohibition against copying goods and products." *Id.* at 29, 121 S.Ct. 1255. Rather, "[t]he physical details and design of a product may be protected under the trademark laws only if they are nonfunctional...." *Clamp Mfg. Co. v. Enco Mfg. Co.*, 870 F.2d 512, 515 (9th Cir.1989) (citing *Vuitton Et Fils S.A. v. J. Young Enters.*, 644 F.2d 769, 772 (9th Cir.1981)). Were a product's functional features protected, then "a monopoly over such features could be obtained without regard to whether they qualify as patents and could be extended forever." *Disc Golf Ass'n v. Champion Discs, Inc.*, 158 F.3d 1002, 1006 (9th Cir.1998) (citation omitted).

Under the Lanham Act, Congress imposes a presumption of functionality, and plaintiff bears the burden of proving non-functionality. 15 U.S.C. § 1125(a)(3) ("In a civil action for trade dress infringement under this chapter for trade dress not registered on the principal register, the person who asserts trade dress protection has the burden of proving that the matter sought to be protected is not functional."). Therefore, Tractel, as the "one who seeks to establish trade dress protection must carry the heavy burden of showing that the feature is not functional, for instance by showing that it is merely an ornamental, incidental, or arbitrary aspect of the device." *TrafFix*, 532 U.S. at 30, 121 S.Ct. 1255. In cases of product design, the Supreme Court has counseled "that design, like color, is not inherently distinctive." *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 212, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000).

In conducting the functionality analysis, which is a question of fact, we must be mindful that " '[f]or an overall product configuration to be recognized as a trademark, the entire design must be nonfunctional.' " *Leatherman Tool Grp. v. Cooper Indus.*, 199 F.3d 1009, 1012 (9th Cir.1999) (quoting *Clamp*, 870 F.2d at 516); *see also Tie Tech, Inc. v. Kinedyne Corp.*, 296 F.3d 778, 786 (9th Cir. 2002) (foreclosing a finding of nonfunctionality where " 'the whole is nothing other than the assemblage of functional parts' " (quoting *Leatherman*, 199 F.3d at 1013)). "De facto" functionality means that the "design of a product has a function, i.e., a bottle of any design holds fluid," whereas "de jure" functionality means that the "product is in its particular shape because it works better in this shape." *Leatherman*, 199 F.3d at 1012 (citation omitted). "[B]efore an overall product configuration can be recognized as a trademark, the entire design must be arbitrary or non de jure functional." *Id.*

*Secalt S.A. v. Wuxi Shenxi Constr. Mach. Co.*, 668 F.3d 677, 683 (9th Cir.2012) (alterations in *Secalt* ).

◼ "Trade dress protection applies to 'a combination of any elements in which a product is presented to a buyer,' including the shape and design of a product." *Art Attacks Ink, LLC v. MGA Entm't Inc.*, 581 F.3d 1138, 1145 (9th Cir.2009) (quoting J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 8:1, at 8–3 (4th ed.2008)); *see also, e.g., Kohler Co. v. Moen Inc.*, 12 F.3d 632, 641 (7th Cir. 1993) ("We have defined 'trade dress' as the total image of a product, including such features as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." (citations and some internal quotation marks omitted)).

**B. *Trade Dress Infringement***

◼ To prove trade dress infringement, a plaintiff must demonstrate that (1) the

trade dress is nonfunctional, (2) the trade dress has acquired secondary meaning, and (3) there is a substantial likelihood of confusion between the plaintiff's and defendant's products. *Disc Golf Ass'n v. Champion Discs*, 158 F.3d 1002, 1005 (9th Cir.1998). Our analysis here centers on the second factor: whether Art Attacks's trade dress has acquired secondary meaning.

To succeed on a trade dress infringement based on product design, the plaintiff must show that her design has attained secondary meaning. *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 214, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). "Secondary meaning can be established in many ways, including (but not limited to) direct consumer testimony; survey evidence; exclusivity, manner, and length of use of a mark; amount and manner of advertising; amount of sales and number of customers; established place in the market; and proof of intentional copying by the defendant." *Filipino Yellow Pages, Inc. v. Asian Journal Publ'ns, Inc.*, 198 F.3d 1143, 1151 (9th Cir.1999). To show secondary meaning, a plaintiff must demonstrate "a mental recognition in buyers' and potential buyers' minds that products connected with the [mark] are associated with the same source." *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 873 (9th Cir.2002) (internal quotation omitted).

*Id.* (alteration in *Art Attacks* ).

■ This Court acknowledges that, in light of the requirements to prove a trade dress infringement claim, it is a close question whether SwimWays's Counterclaim pleads plausible claims for trade dress infringement. This Court, however, concludes that SwimWays has sufficiently pled Counterclaims Counts II and III to provide TIG with notice of SwimWays's

claims. TIG has raised significant questions regarding the issue of whether SwimWays has trade dress rights in the products at issue in Counterclaims Counts II and III, but such fact-intensive inquires are more appropriate when TIG tests the merits of SwimWays's claims on summary judgment or at trial. This Court therefore DENIES the TIG Motion.

This Court now turns to the issue of whether federal trade dress law preempts TIG's state law claims based upon actions that SwimWays allegedly took while attempting to protect SwimWays's trade dress rights.

### C. *Preemption of State Law Claims*

Based on this Court's review of the relevant case law, this Court concludes that federal trade dress law may preempt TIG's state law claims, but this Court cannot rule on the preemption issue until after it determines the scope of SwimWays's trade dress rights.

For example, the Federal Circuit has stated:

> That is not to say that patent law principles have no preemptive effect on state law claims simply because those claims are for trade dress protection. If, under the rubric of "trade dress" protection, state law should purport to give Midwest the right to exclude others from using a feature that confers a significant non-reputation-related market advantage over its competitors, the state law cause of action would conflict with federal patent law principles and be preempted. *See Bonito Boats[, Inc. v. Thunder Craft Boats, Inc.]*, 489 U.S. [141,] 167, 109 S.Ct. 971, [103 L.Ed.2d 118,] 9 U.S.P.Q.2d [1847,] 1858–59 [ (1989) ]; *Elmer v. ICC Fabricating, Inc.*, 67 F.3d 1571, 1580, 36 U.S.P.Q.2d 1417, 1423 (Fed.Cir.1995). The central question, as under the Lanham Act, is

whether the feature for which trade dress protection is asserted is functional.

Even if curved winch posts are found to be a functional feature in the trailers claimed in the '261 patent, Midwest may still be entitled to claim trade dress protection in its particular design. Midwest contends that it is not seeking protection for all curved winch posts, but only for the particular curved winch post design that it uses as its trade dress. If that particular design is sufficiently distinctive to serve as a designation of source and if the protection of that particular design does not result in a meaningful restriction on Karavan's ability to compete in the market, either before or after the expiration of the '261 patent, then Midwest's state law claims, as well as its Lanham Act claim, would not be barred by any overriding federal policy.

In sum, the fact that Midwest's patent discloses and claims a trailer having a curved winch post does not necessarily mean that Midwest cannot assert trade dress rights in the particular curved winch post design that it uses in its trailers. In order to determine whether Midwest enjoys trade dress rights, the district court must determine whether Midwest's winch post design is functional, and whether Midwest has satisfied the other requirements for protection under the Lanham Act and Iowa state trademark law.

*Midwest Indus., Inc. v. Karavan Trailers, Inc.,* 175 F.3d 1356, 1365 (Fed.Cir.1999), *abrogated on other grounds by TrafFix Devices, Inc. v. Mktg. Displays, Inc.,* 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001).

 This Court agrees with the reasoning in *Midwest Industries.* If this Court concludes that SwimWays had protectable trade dress rights in the products at issue in TIG's Complaint, SwimWays was entitled to take reasonable measures to enforce those rights. Any state law claims arising from the actions that SwimWays took in the reasonable protection of its trade dress rights would be preempted by federal trade dress law. Thus, for the same reasons as those set forth in *Midwest Industries,* this Court DENIES the SwimWays Motion as to the portions of Counts V, VI, and VII based on SwimWays's actions relating to the enforcement of SwimWays's trade dress rights. The denial is WITHOUT PREJUDICE to the filing of a new motion to dismiss if this Court rules in SwimWays's favor on SwimWays's trade dress infringement claims.

### III. *Joinders*

HIC and Sur each filed "a joinder of simple agreement" in the SwimWays Motion. *See* Local Rule LR7.9.[4] Insofar as HIC and Sur have merely stated that they agree with SwimWays that SwimWays is entitled to dismissal of TIG's claims against SwimWays, this Court GRANTS

---

4. Local Rule 7.9 states, in pertinent part:

Except with leave of court based on good cause, any substantive joinder in a motion or opposition must be filed and served within seven (7) days of the filing of the motion or opposition joined in. "Substantive joinder" means a joinder based on a memorandum supplementing the motion or opposition joined in. If a party seeks the same relief sought by the movant for himself, herself, or itself, the joinder shall clearly state that it seeks such relief so that it is clear that the joinder does not simply seek relief for the original movant. A joinder of simple agreement may be filed at any time....

HIC and Sur each filed a joinder on May 13, 2013, almost two months after the filing of the SwimWays Motion. Neither joinder contains a substantive memorandum, and neither joinder expressly requests the same relief for the joining party that SwimWays requested in the SwimWays Motion.

HIC's joinder and Sur's joinder. This Court emphasizes that, at the present time, there are no issues before this Court regarding TIG's claims against HIC, Sur, and Corish. This Court expresses no opinion, and makes no ruling, regarding the merits of those claims.

## CONCLUSION

On the basis of the foregoing, the Swim-Ways Motion to Dismiss, filed March 18, 2013, is HEREBY GRANTED IN PART AND DENIED IN PART, and the TIG Motion, filed April 1, 2013, is HEREBY DENIED. Specifically, the SwimWays Motion is GRANTED insofar as the portions of Counts V, VI, and VII based on SwimWays's actions allegedly taken in a good faith attempt to enforce SwimWays's patent rights are HEREBY DISMISSED WITHOUT PREJUDICE. The SwimWays Motion is DENIED in all other respects.

This Court GRANTS TIG leave to file a First Amended Complaint consistent with the terms of this Order. TIG must file its First Amended Complaint by no later than **July 23, 2013.** This Court CAUTIONS TIG that, if it fails to file its First Amended Complaint by **July 23, 2013,** the claims which this Order dismissed without prejudice may be dismissed with prejudice. Further, if TIG's First Amended Complaint fails to cure the defects identified in this Order or adds new parties, claims, or theories of liability, this Court may dismiss those claims with prejudice. If TIG wishes to add new parties, claims, or theories of liability, TIG must comply with Fed.R.Civ.P. 15 and the current scheduling order.

IT IS SO ORDERED.